## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARREL TAYLOR, KEVIN LEWIS, DARRELL BURKHART, and LEEVERTIS PAGE, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-06105 |
| Plaintiffs, | |
| - against - | Honorable John Robert Blakey |
| THE SALVATION ARMY NATIONAL CORPORATION, and THE SALVATION ARMY d/b/a CENTRAL TERRITORY OF THE SALVATION ARMY, | |
| Defendant. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## RULE 12(b)(1), (2) AND (6) MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

I.     Asserted Classes and Causes of Action ...................................................................... 4

II.    Summary of Complaint's Allegations ........................................................................ 4

ARGUMENT ....................................................................................................................... 6

I.     The National Corporation Is Not A Proper Defendant For Named Plaintiffs' Claims. ........... 6

      A.    The National Corporation should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. ........................................................................... 7

            1.    This Court does not have general jurisdiction over the National Corporation ............................................................................................... 8

            2.    This Court does not have specific jurisdiction over the National Corporation ............................................................................................... 9

      B.    The National Corporation should be dismissed under Rule 12(b)(6) because Named Plaintiffs fail to plead that the National Corporation knew or should have known of the "threats" upon which their complaint is based, or that it was engaged in any "venture" with the Illinois Corporation relating to the ARCs. ........................................................................................ 11

II.    Count One Should Be Dismissed Under Rules 12(b)(6) and 12(b)(1) Because Named Plaintiffs Fail to State A Claim Under Section 1589(a) of the TVPRA and Fail to Allege Article III Standing ............................................................................................ 13

      A.    Named Plaintiffs fail to state a claim for Count One under Rule 12(b)(6). ............. 13

            1.    Named Plaintiffs' have not pleaded facts showing that they engaged in "labor or services" as required by Section 1589(a). .................................. 15

            2.    Named Plaintiffs have not pleaded that the Illinois Corporation engaged in unlawful coercion in violation of Section 1589(a). ..................... 17

                  a.    Named Plaintiffs' asserted "threats" do not amount to "threats of serious harm" or unlawful means of coercion under Section 1589(a). ...................................................................... 17

                  b.    The complaint does not plead facts plausibly showing that the Illinois Corporation engaged in unlawful means of coercion. ........... 20

            3.    Named Plaintiffs have not alleged that they engaged in work therapy *because of* any purported threats by the Illinois Corporation. ...................... 22

      B.    Named Plaintiffs also fail to allege Article III standing for Count One under Rule 12(b)(1). .................................................................................................. 23

III.     The Complaint's Remaining Counts Two Through Five Should Be Dismissed
         Because They Are Derivative of Count One, Which Is Not a Valid Claim..........................24

CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
532 F. Supp. 3d 1018 (D. Or. 2021) ................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 15, 21

*Beaulieu v. Ashford Univ.*,
529 F. Supp. 3d 834 (N.D. Ill. 2021) ........................................................ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 14

*Bennett v. Frank*,
395 F.3d 409 (7th Cir. 2005) ................................................................. 1

*BNSF Ry. V. Tyrell*,
137 S. Ct. 1549 (2017) ...................................................................... 9

*Brook v. McCormley*,
873 F.3d 549 (7th Cir. 2017) ............................................................... 9

*C.T. v. Red Roof Inns, Inc.*,
Case No. 2:19-CV-5384, 2021 WL 2942483 (S.D. Ohio July 1, 2021) ................... 7

*Cassillas v. Madison Avenue Associates, Inc.*,
926 F.3d 329 (7th Cir. 2019) ............................................................... 23

*Copeland v. C.A.A.I.R.*,
Case No. 17-CV-564-TCK-JFJ, ECF No. 237 (N.D. Okla. Dec. 10, 2020) ............... 18

*Crowe v. Director, TDCJ-CID*,
2018 WL 7814730 (E.D. Tex. Sept. 18, 2018), *report and recommendation
adopted*, No. 6:16cv491, 2019 WL 1274787 (E.D. Tex. Mar. 19, 2019) ............ 19, 20

*Curry v. Revolution Lab'ys, LLC*,
949 F.3d 385 (7th Cir. 2020) ............................................................. 7, 8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................................................................... 8, 9

*Deiker v. TrueAccord Corp.*,
No. 1:20-CV-00669, 2021 WL 4502138 (N.D. Ill. Sept. 30, 2021) ..................... 22

*Denberg v. U.S. R.R. Retirement Bd.*,
    696 F.2d 1193 (7th Cir. 1983) ............................................................................ 10

*Gaines v. Dart*,
    Case No. 20-CV-03487, 2021 WL 394814 (N.D. Ill. Feb. 4, 2021) ..................... 15

*Greene v. Mizuho Bank, Ltd.*,
    169 F. Supp. 3d 855 (N.D. Ill. 2016) ............................................................... 6, 10

*Headley v. Church of Scientology Intern.*,
    687 F.3d 1173 (9th Cir. 2012) ...................................................................... 17, 18

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*,
    136 F. Supp. 3d 968 (N.D. Ill. 2015) ...................................................................... 7

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*,
    965 F.3d 571 (7th Cir. 2020) ................................................................................... 8

*Jensen v. United States Tennis Assoc.*,
    Case No. 20-2422-JWL, 2020 WL 6445117 (D. Kans. Oct. 30, 2020) ........... 11, 12

*Jones v. Alfred H. Mayer Co.*,
    392 U.S. 409 (1968) ............................................................................................... 19

*Kelsey v. Goldstar Estate Buyers Corp.*,
    No. 3:13-cv-00354-HU, 2014 WL 1155253 (D. Or. March 21, 2014) ........... 20, 21

*Konstantinova v. Garbuzov*,
    No. 2:21-CV-12795 (WJM), 2021 WL 5881670 (D.N.J. Dec. 13, 2021) ............... 24

*Kowalski v. Cook County Officers Electoral Bd.*,
    Case No. 16-cv-1891, 2016 WL 4765711 (N.D. Illinois Sept. 13, 2016) ............... 23

*Lopez v. Miller*,
    Case No. 17-CV-2268, 2017 WL 11472556 (C.D. Ill. Nov. 29, 2017) ........... 13, 20

*MAC Funding Corp. v. Northeast Impressions, Inc.*,
    215 F. Supp. 2d 978 (N.D. Ill. 2002) ................................................................... 10

*Manley v. Indiana Dept. of Correction*,
    No. 3:13-CV-1308 JD, 2015 WL 4077243 (N.D. Ind. July 6, 2015) .................... 19

*McClellan v. CSX Transportation, Inc.*,
    No. 18-CV-4183, 2018 WL 6192192 (N.D. Ill. Nov. 28, 2018) .............................. 7

*McCullough v. City of Montgomery*,
    Case No. 2:15-cv-463-RCL, 2020 WL 3803045 (M.D. Ala. July 7, 2020) ...... 22, 24

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc.*,
   623 F.3d 440 (7th Cir. 2010)..........................................................................7, 8

*Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*,
   485 F. Supp. 2d 944 (N.D. Ill. 2007) .................................................................. 10

*Muchira v. Al-Rawaf*,
   850 F.3d 605 (4th Cir. 2017)........................................................................ 13, 18

*Muchira v. Al-Rawaf*,
   Civil Action No. 1:14-cv-770, 2015 WL 1787144 (E.D. Va. Apr. 15, 2015) ........... 14, 22, 24

*Nevada Dep't of Hum. Res. v. Hibbs*,
   538 U.S. 721 (2003) ............................................................................................ 19

*Novoa v. GEO Group, Inc.*,
   Case No. EDCV 17-2514 JGB, 2018 WL 3343494 (C.D. Cal. June 21, 2018)............... 20, 21

*Ornum v. Am. Med. Ass'n*,
   No. 2:14-CV-921-RJS-EJF, 2016 WL 8292202 (D. Utah Jan. 29, 2016), *report
   and recommendation adopted in part sub nom. Van Ornum v. Am. Med. Ass'n*,
   No. 214CV00921RJSEJF, 2016 WL 1257902 (D. Utah Mar. 30, 2016).................................7

*Owino v. CoreCivic, Inc.*,
   2018 WL 2193644 (S.D. Cal. 2018) ..................................................................... 19

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003)................................................................................7

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*,
   513 F. Supp. 3d 761 (E.D. Mich. 2021) ............................................................... 21

*Roman v. Tyco Simplex Grinnell*,
   Case No. 8:16-cv-3449-T-33AEP, 2017 WL 2427251 (M.D. Fla. June 5, 2017) ................. 21

*S.J. v. Choice Hotels Internat'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020)............................................................... 11, 12

*Saraswat v. Business Integra, Inc.*,
   15-CV-4680, 2019 WL 1865193 (E.D. N.Y. Apr. 25, 2019) ................................... 16

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
   902 F.3d 735 (7th Cir. 2018)............................................................................... 23

*Tassinari, et. al. v. The Salvation Army National Corporation, et. al.*,
   Case No. 1:21-CV-10806 (D. Mass.)...................................................................... 3

*Tolbert, et. al. v. The Salvation Army, a Georgia Corporation*,
   Case No. 1:21-cv-04703-LMM (N.D. Ga.)............................................................. 3

*United States v. Bradley*,
    390 F.3d 145 (1st Cir. 2004) ..................................................................... 17

*United States v. Callahan*,
    801 F.3d 606 (6th Cir. 2015) ..................................................................... 15

*United States v. Marcus*,
    628 F.3d 36 (2d Cir. 2010) ........................................................................ 16

*United States v. Toviave*,
    761 F.3d 623 (6th Cir. 2014) ..................................................................... 16

*Vaughn v. Phoenix House Programs of New York*,
    No. 14-CV-3918, 2015 WL 5671902 (S.D.N.Y. Sept. 25, 2015) ............. 17

*Williams v. Rohm and Haas Pension Plan*,
    No. NA02-C-0123-B/H, 2003 WL 22271111 (S.D. Ind. Sept. 26, 2003) .............. 6

*Williams v. Strickland*,
    87 F.3d 1064 (9th Cir. 1996) ..................................................................... 16

*Xydakis v. Target, Inc.*,
    333 F. Supp. 2d 683 (N.D. Ill. 2004) ....................................................... 22

**Statutes**

18 U.S.C. § 1589(a) ............................................................................... *passim*

18 U.S.C. § 1589(b) ............................................................................... 4, 11, 23

18 U.S.C. § 1589(c) ............................................................................... 15, 18

18 U.S.C. § 1590(a) ............................................................................... 4, 24

18 U.S.C. § 1594(a) ............................................................................... 4, 24

18 U.S.C. § 1594(b) ............................................................................... 4, 24

18 U.S.C. § 1595(a) ............................................................................... 11, 24

735 Ill. Comp. Stat. 5/2-209(c) ................................................................ 8

Pub. L. No. 106–386, § 102, 114 Stat. 1488 (2000) ................................ 1

**Other Authorities**

https://www.salvationarmyusa.org/usn/rehabilitation .............................. 2, 20

Rule 12(b)(1) .......................................................................................... 22

Rule 12(b)(1) and 12(b)(6) ........................................................................... 4

Rule 12(b)(2) ................................................................................................ 7

Rule 12(b)(6) ................................................................................. 11, 13, 14

Rules 12(b)(6) and 12(b)(1) ........................................................................ 12

U.S. Const. Amend. 13, sec. 1 .................................................................... 19

Defendants The Salvation Army National Corporation ("National Corporation") and The Salvation Army, an Illinois corporation[1] ("Illinois Corporation") (together, "Defendants") submit the following memorandum in support of their motion to dismiss the class action complaint filed by plaintiffs Darrell Taylor, Kevin Lewis, Darrell Burkhart, and Leevertis Page ("Named Plaintiffs").

## INTRODUCTION

This lawsuit misappropriates the noble purpose of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Congress enacted the TVPRA to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106–386, § 102, 114 Stat. 1488 (2000). Named Plaintiffs' complaint—which complains about the work-therapy component of The Salvation Army's adult rehabilitation program, a religious and charitable program that exists only to serve adults who are struggling with a variety of spiritual and social challenges—has nothing to do with slavery, trafficking, or forced labor. Given The Salvation Army's strong anti-trafficking position, and the services and resources that The Salvation Army has committed to fighting trafficking globally, The Salvation Army takes great offense to Named Plaintiffs' TVPRA allegations. The notion that individuals who participate in The Salvation Army's rehabilitation programs could be viewed as victims of human trafficking or forced labor within the meaning of TVPRA is an "idea [that] was too outlandish to occur to anyone when the legislation was under consideration by Congress." *Bennett v. Frank,* 395 F.3d 409, 410 (7th Cir. 2005) (rejecting an analogous claim under the Fair Labor Standards Act).

---

[1] The complaint incorrectly identifies Defendant The Salvation Army, an Illinois corporation as "The Salvation Army d/b/a Central Territory of The Salvation Army."

Defendants are two of several non-profit corporate entities in the United States that conduct the religious and charitable activities of The Salvation Army, the worldwide religious and charitable organization, which is also a branch of the universal Christian Church. As part of the many religious and social services programs that it provides in the United States, The Salvation Army preaches the Gospel, collects donations to benefit the poor, and each year provides life-changing rehabilitation services through its Adult Rehabilitation Center programs ("ARCs") to thousands of people with a wide variety of spiritual and social challenges who have been otherwise rejected by society. The ARCs welcome persons off the street, most often free of any charge, and provide them with food, clothing, lodging, counseling, and equip them with work skills and structure to help them get their lives back on track. The general criteria for participation in the ARCs are publicly available on The Salvation Army's website.[2] Among other things, participants are required to have a Social Security card or birth certificate, pass a drug test upon arrival, attend worship classes and services, and be able to perform a work therapy assignment for eight hours a day.[3] "Work therapy," *i.e.*, performing basic assigned tasks at the ARC or a Salvation Army thrift store operated in conjunction with the ARC to develop vocational skills and habits under the supervision of counselors and others, is an integral component of the mission of the ARCs to help the beneficiaries of the program become productive members of society. Work therapy is only one element of the mix of services offered by the ARCs to help beneficiaries with their rehabilitation.[4] One of the hallmarks of The Salvation Army's spiritually-based approach is that individuals make a voluntary choice to become participants in an ARC and to remain in the program.

---

[2] *See* https://www.salvationarmyusa.org/usn/rehabilitation (cited in the complaint at Compl. ¶ 5, fn. 1).
[3] *Id.*
[4] *Id.*

This case is one of several ongoing actions[5] in what appears to be a concerted nationwide campaign to attack the ARCs. Each case alleges different, but equally baseless, causes of action. This complaint alleges that The Salvation Army—the organization that many Americans associate with red kettles and toy drives for children during the holidays—has violated the TVPRA. Named Plaintiffs allege that they suffered harm at the Illinois Corporation's ARCs because they performed rehabilitative work-therapy at the ARCs and were purportedly exposed to "threats" during their participation in the programs. The complaint is meritless and should be dismissed in its entirety:

- *First*, as a threshold matter, the National Corporation should be dismissed as an improper defendant. This Court lacks personal jurisdiction over the National Corporation as it has no material contacts with Illinois, and the putative Nationwide Classes should accordingly be stricken as they bring claims against the National Corporation only. Named Plaintiffs also fail to plead necessary facts showing that the National Corporation made any of the purported "threats" upon which they base their complaint, that the National Corporation knew or should have known of such "threats," or that it engaged in any "venture" with the Illinois Corporation relating to the operation of the ARCs.

- *Second*, the complaint does not validly plead an underlying forced labor claim (Count One) under 18 U.S.C. § 1589(a) against either Defendant, as Named Plaintiffs fail to plead facts showing that they performed "labor or services" as contemplated by the TVPRA or that the Illinois Corporation engaged in unlawful means of coercion. Named Plaintiffs also fail to plausibly allege the necessary elements of their TVPRA claim, including that any of the vague "threats" upon which their complaint is based actually *caused* them to work at the ARCs, that any of them suffered serious harm, or that Defendants engaged in any conduct that constitutes an abuse of law. Named Plaintiffs' failure to link their alleged work to the Illinois Corporation's purported "threats" also dooms their Article III standing for the underlying forced labor claim.

- *Third*, the complaint's remaining claims (Counts Two through Five) fail because they require a plausibly valid forced labor claim to proceed. Named Plaintiffs have not alleged one here, and so the complaint must be dismissed in its entirety.

---

[5] Plaintiffs' lawyers in this case have brought the following actions in other federal courts, attacking various aspects of The Salvation Army's ARCs: *Tassinari, et. al. v. The Salvation Army National Corporation, et. al.*, Case No. 1:21-CV-10806 (D. Mass.); *Tolbert, et. al. v. The Salvation Army, a Georgia Corporation*, Case No. 1:21-cv-04703-LMM (N.D. Ga.), filed the same day as this complaint.

## **BACKGROUND**

**I.** **Asserted Classes and Causes of Action.**

The complaint is a putative class action, brought under the TVPRA on behalf of participants in The Salvation Army's ARCs. The complaint asserts four classes of plaintiffs: (1) a "Nationwide Walk-In" Class represented by Named Plaintiff Kevin Lewis; (2) a "Central Territory Walk-In" Class represented by Named Plaintiffs Kevin Lewis and Leervertis Page; (3) a "Nationwide Justice-Referred" Class represented by Named Plaintiff Darrell Taylor; and (4) a "Central Territory Justice-Referred" Class represented by Named Plaintiffs Darrell Taylor and Darrell Burkart.

All Named Plaintiffs and the two Central Territory Classes assert five causes of action against the Illinois Corporation:

- Count One: a claim under 18 U.S.C. § 1589(a) ("Obtaining Trafficked Labor").

- Count Two: a claim under 18 U.S.C. § 1589(b) ("Benefitting from Trafficked Labor").

- Count Three: a claim under 18 U.S.C. § 1590(a) ("Recruiting Trafficked Labor").

- Count Four: a claim under 18 U.S.C. § 1594(b) ("Conspiracy to Recruit, Obtain, and Benefit from Trafficked Labor").

- Count Five: a claim under 18 U.S.C. § 1594(a) ("Attempted Trafficking").

Named Plaintiffs Taylor and Lewis and the two Nationwide Classes also assert Counts Two through Five against the National Corporation, but not Count One.

**II.** **Summary of Complaint's Allegations[6]**

All five causes of action are tied to the same general assertions. Named Plaintiffs assert that the work-therapy aspect of the ARCs stems from the National Corporation's policy. Named Plaintiffs assert that they participated in the Illinois Corporation's ARCs where they performed

---

[6] The complaint's alleged facts are taken as true for purposes of this motion's Rule 12(b)(1) and 12(b)(6) arguments only.

4

assigned tasks at an Illinois Corporation ARC or thrift store and while there were exposed to "threats" by employees of the Illinois Corporation that were intended to keep them engaged in this rehabilitative part of the ARC program. The complaint divides the plaintiffs and the purported class(es) into two general groups: "Justice-Referred Plaintiffs" and "Walk-In Plaintiffs."

*"Justice-Referred Plaintiffs"*: Named Plaintiffs Taylor and Burkhart, on behalf of the two Justice-Referred Classes, assert that they were sent to the Illinois Corporation's ARCs as part of their parole or prison release, and that as part of their participation at the ARCs, they participated in work therapy, *i.e.*, performing assigned tasks at the ARCs or at Salvation Army thrift stores operated in conjunction with the ARCs for "at least 8 hours a day, and at least 40 hours a week." (*See, e.g.*, Compl. ¶¶ 147-151, 155-158, 161, 196, 199, 206-208). They assert that employees of the Illinois Corporation used "threats" of jail, parole violations, or reports to probation officers if they did not work at the Illinois Corporation's facilities. (*See, e.g.*, Compl. ¶¶ 167-171, 213-214).

Named Plaintiffs Taylor and Burkhart do not state the date, time, place, or means of these purported "threats." They do not identify the persons making these purported "threats." Nor do they allege that they believed the "threats" or that the threats caused them to continue participating in the work-therapy component of the Illinois Corporation's ARC programs. Named Plaintiffs Taylor and Burkhart do not allege that they were subject to force or were physically restrained from leaving the ARCs at any time. They do not allege that the Illinois Corporation ever told them that they could not leave. In fact, Named Plaintiff Burkhart admits leaving his respective ARC "after four or five weeks" on his own volition. (Compl. ¶ 217).

*"Walk-In Plaintiffs"*: Named Plaintiffs Lewis and Page, on behalf of the two Walk-In Classes, assert that they voluntarily "walked in" off the street to participate in the Illinois Corporation's ARCs, and that as part of their participation at the ARCs, they participated in work therapy, *i.e.*, performing assigned tasks at the ARCs and Salvation Army thrift stores operated in

conjunction with the ARCs for "at least 8 hours a day, and at least 40 hours a week." (*See, e.g.* Compl. ¶¶ 173, 176-180, 185, 219, 223-225, 227-229). They assert that employees of the Illinois Corporation used "threats" of denying them food and shelter if they did not work at the Illinois Corporation's ARCs and related thrift stores. (*See, e.g.*, Compl. ¶¶ 192, 241).

Named Plaintiffs Lewis and Page do not state the date, time, place, or means of these purported "threats." They do not identify the persons making these purported "threats." Nor do they allege that they believed the "threats" or that the threats caused them to continue participating in the work-therapy component of the Illinois Corporation's ARC programs. Named Plaintiffs Lewis and Page do not allege that they were subject to force or were physically restrained from leaving the ARCs at any time. They do not allege that the Illinois Corporation ever told them that they could not leave. Notably, Named Plaintiff Lewis admits that he voluntarily "walked in" to participate in an Illinois Corporation ARCs not once, but *twice*—once in 2015 and again in 2019. (Compl. ¶ 173).

## ARGUMENT

A class action complaint lives or dies on the allegations of the named plaintiffs. *See, e.g.*, *Williams v. Rohm and Haas Pension Plan*, No. NA02-C-0123-B/H, 2003 WL 22271111 at *4 (S.D. Ind. Sept. 26, 2003) ("If it is established that the named plaintiff in a proposed class action fails to state a claim upon which relief can be granted, the complaint must be dismissed as to the unnamed plaintiffs unless another class representative is chosen.") (citing *Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir. 1995)). *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) (noting that personal jurisdiction may arise only from the claims of the named plaintiffs).

**I.    The National Corporation Is Not A Proper Defendant For Named Plaintiffs' Claims.**

The complaint should be dismissed as against the National Corporation for lack of personal jurisdiction because the National Corporation has no material contacts with the State of Illinois. The

claims of the Nationwide Classes, who bring claims against National Corporation only, accordingly should be stricken and dismissed. The complaint should also be dismissed as against the National Corporation because Named Plaintiffs fail to allege that it knew or should have known of the "threats" upon which their complaint is based or that it was involved in any "venture" with the Illinois Corporation relating to the ARCs.

### A.    The National Corporation should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

Under Rule 12(b)(2), a court must dismiss claims against a defendant when the court lacks personal jurisdiction over the defendant. In opposition to a motion to dismiss, plaintiffs bear the burden of demonstrating personal jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). A court need not credit plaintiffs' conclusory allegations or draw farfetched inferences to reach a conclusion that it has personal jurisdiction over a defendant. *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015). A court should accept as true all uncontradicted facts advanced by the defendant.[7] *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020).

In a case involving a federal question, "a federal court has personal jurisdiction over [a] defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc.*, 623 F.3d 440, 443 (7th Cir. 2010).

The TVPRA does not authorize nationwide service. *See C.T. v. Red Roof Inns, Inc.*, Case No. 2:19-CV-5384, 2021 WL 2942483 at *10 (S.D. Ohio July 1, 2021) (holding that the TVPRA

---

[7] With this motion, Defendants submit the Declarations of Kenneth O. Johnson, Jr. ("Johnson Decl.") and Randall Polsley ("Polsley Decl."), which show that this Court lacks personal jurisdiction over the National Corporation. The Court may consider these Declarations in ruling on the National Corporation's Rule 12(b)(2) motion. *McClellan v. CSX Transportation, Inc.*, No. 18-CV-4183, 2018 WL 6192192, at *1 (N.D. Ill. Nov. 28, 2018) ("In ruling on a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings") (citing *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

"does not contemplate nationwide service of process"); *Ornum v. Am. Med. Ass'n*, No. 2:14-CV-921-RJS-EJF, 2016 WL 8292202, at *4 (D. Utah Jan. 29, 2016), *report and recommendation adopted in part sub nom. Van Ornum v. Am. Med. Ass'n*, No. 214CV00921RJSEJF, 2016 WL 1257902 (D. Utah Mar. 30, 2016) (noting that the Trafficking Victims Protection Act, among others, does not confer nationwide service of process). Accordingly, this Court has personal jurisdiction over the National Corporation only if it can be properly served in Illinois under Illinois' long-arm statute. 735 Ill. Comp. Stat. 5/2-209(c). *See Mobile Anesthesiologists Chicago, LLC*, 623 F.3d at 443 (explaining same).

The question of whether the National Corporation can properly be served in Illinois under Illinois law is coextensive with whether personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *See* 735 Ill. Comp. Stat. 5/2-209(c) ("A court may exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States"); *Curry*, 949 F.3d at 393 (7th Cir. 2020) ("We have held that the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause").

The Fourteenth Amendment permits personal jurisdiction over a defendant only where the defendant has sufficient "minimum contacts" with the forum, such that the defendant may reasonably expect to be "haled into court there." *Mobile Anesthesiologists*, 623 F.3d at 443-44 (internal citations and quotation marks omitted). There are two forms of personal jurisdiction—general and specific. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (explaining the same).

> **1.** **This Court does not have general jurisdiction over the National Corporation.**

General jurisdiction exists only where the defendant can be fairly said to be "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A corporation is "at home" in the

forum state if it is incorporated there or if its principal place of business is in the forum. *Id.; see also BNSF Ry. V. Tyrell*, 137 S. Ct. 1549, 1559 (2017) (personal jurisdiction lacking because the defendant, which was neither incorporated nor had its principal place of business in Montana, was not "at home" in the state, notwithstanding defendant's operations in Montana).

The National Corporation is incorporated in New Jersey and is headquartered in Alexandria, Virginia. It neither owns nor leases any property in Illinois. (Johnson Decl. ¶¶ 12-13). Accordingly, the National Corporation is not "at home" in Illinois, and general jurisdiction does not exist. *Daimler AG*, 571 U.S. at 127.

### 2. This Court does not have specific jurisdiction over the National Corporation.

For specific jurisdiction to exist, a defendant must have "minimum contacts" with the forum state, and plaintiff's claims must "arise out of" or be "related to" those contacts. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (internal quotation marks and citations omitted). Named Plaintiffs assert that the National Corporation has the following contacts with Illinois:

- The National Corporation held a ceremony in Chicago, Illinois over a decade ago. (Compl. ¶ 55)[8];

- The National Corporation scheduled a conference in Illinois, which was eventually cancelled and never took place due to COVID-19, but that the National Corporation, "by and through the National Advisory Board," drafted a handbook for the conference that discusses ARCs. (Compl. ¶¶ 56-59);

- The National Corporation advertises Salvation Army programs and services nationwide, including in Illinois, to solicit donations and ARC participants (Compl. ¶¶ 60-64);

- The National Corporation solicits cash and physical donations nationwide, including in Illinois (Compl. ¶¶ 66-67).

These asserted "contacts" in no way "directly relat[e]" to Named Plaintiffs' claims, the central allegation of which is that they were exposed to "threats" while participating in the Illinois

---

[8] (Citing https://www.salvationarmy.org/ihq/news/9526CFF0A589BD64802577E0004AB49F at fn. 6.)

Corporation's ARCs. *Brook*, 873 F.3d at 552 ("Specific jurisdiction requires a defendant's contacts with the forum State to be *directly related to* the conduct pertaining to the claims asserted") (emphasis added). The National Corporation does not operate any programs, including any ARCs, either in Illinois or elsewhere; nor does it have control over the operations of the Illinois Corporation. (Johnson Decl. ¶ 5, 9); (Polsley Decl. ¶¶ 7-8). The National Corporation does not operate, own, or lease any ARCs or thrift stores in Illinois. (Johnson Decl. at ¶¶ 12-13); (Polsley Decl. ¶ 7). The National Corporation does not operate in, and is not registered to do business in, Illinois. (Johnson Decl. at ¶ 8). Furthermore, the National Corporation has neither entered into nor participated in a venture or any other type of business relationship with respect to the operations of the ARCs by the Illinois Corporation in the Central Territory. (*Id.* at ¶ 11). The National Corporation has had no contact with any of the Named Plaintiffs, let alone contact with them in Illinois (*id*. at ¶ 10), and the complaint does not assert that the National Corporation or its employees either made any alleged "threats" to Named Plaintiffs, or knew about them. In short, the National Corporation has not "purposefully avail[ed] itself of the privilege of conducting activities" in Illinois that materially relate to Named Plaintiffs' claims under the TVPRA. *MAC Funding Corp. v. Northeast Impressions, Inc.*, 215 F. Supp. 2d 978, 980 (N.D. Ill. 2002) (internal quotation marks and citations omitted); *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 485 F. Supp. 2d 944, 950 (N.D. Ill. 2007) (granting motion to dismiss for lack of personal jurisdiction where plaintiff's claims did not arise from defendants' contacts with forum jurisdiction).

Because the Nationwide Classes assert claims against the National Corporation only, and this Court lacks personal jurisdiction over the National Corporation, the Nationwide Classes should be stricken and their corresponding claims dismissed. *See, e.g. Denberg v. U.S. R.R. Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983) (named plaintiffs must establish personal jurisdiction over

defendant for corresponding claims of absent class members to survive); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d at 866 (same).

**B.    The National Corporation should be dismissed under Rule 12(b)(6) because Named Plaintiffs fail to plead that the National Corporation knew or should have known of the "threats" upon which their complaint is based, or that it was engaged in any "venture" with the Illinois Corporation relating to the ARCs.**

The National Corporation should be dismissed for a second reason: Named Plaintiffs fail to state a claim against the National Corporation, as they fail to plead that the National Corporation knew or should have known of the "threats" upon which their complaint is based.

Named Plaintiffs do not allege that the National Corporation made any purported "threats" to keep them participating in the ARCs. They assert that factually insufficient and thus implausible allegation and their primary—albeit defective as a matter of law—"forced labor claim" (Count 1) against the Illinois Corporation only. *See* Section II *infra*. Instead, Named Plaintiffs bring Counts 2 through 5, a set of derivative claims, against the National Corporation under the theory that the National Corporation "knowingly benefitted" from Named Plaintiffs' asserted "forced labor." (*See, e.g.*, Compl. ¶¶ 268-280). Such claims are known as "venture" liability claims. *See, e.g., Jensen v. United States Tennis Assoc.*, Case No. 20-2422-JWL, 2020 WL 6445117 at *5 (D. Kans. Oct. 30, 2020) (explaining the elements of "venture" liability under the TVPRA).

The TVPRA sets forth a civil action for venture liability at 18 U.S.C. § 1589(b) and 18 U.S.C. § 1595(a). *See, e.g.* 18 U.S.C. § 1589(b) (setting forth a statutory violation for "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection [1589(a)] . . . ."). Venture liability exists only where (1) a defendant knowingly benefitted financially or received anything of value; (2) from participation in an unlawful trafficking or forced labor venture; and (3) the defendant knew or should have known it was engaged in an

unlawful trafficking or forced labor venture. *See S.J. v. Choice Hotels Internat'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020).

Named Plaintiffs' venture liability claims against the National Corporation fail because they do not plausibly allege or plead facts showing that the National Corporation knew or should have known of the purported "threats" upon which their complaint is based. Named Plaintiffs do not allege that employees or supervisors of the National Corporation were present when "threats" were made to them. They do not plead facts that the National Corporation had received notice of past unlawful "threats," that they reported any "threats" to the National Corporation, or that the National Corporation had reason to know of such "threats." As demonstrated above, *see supra* Part I.A., this pleading defect also means that Named Plaintiffs cannot demonstrate specific jurisdiction over the National Corporation.

Federal courts consistently dismiss venture liability claims, such as these, where a plaintiff fails either to plead facts showing that a third-party participated in a venture or that an alleged participant knew or should have known that the plaintiffs were being unlawfully trafficked. *See Jensen*, 2020 WL 6445117 at *5-6 (dismissing venture liability claim where plaintiff failed to plead that third-party tennis association knew or recklessly disregarded that she was being abused by coach); *Choice Hotels Internat'l, Inc.*, 473 F. Supp. 3d at 154 ("Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA"); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1026-1028 (D. Or. 2021) (dismissing amended complaint where pleading failed to allege facts showing that hotel chain knew or should have known of plaintiff's unlawful trafficking). The complaint as against the National Corporation thus fails to state a claim.

**II.    Count One Should Be Dismissed Under Rules 12(b)(6) and 12(b)(1) Because Named Plaintiffs Fail to State A Claim Under Section 1589(a) of the TVPRA and Fail to Allege Article III Standing.**

Named Plaintiffs rest their complaint on Count One, a forced labor claim under section 1589(a) of the TVPRA, which they assert against the Illinois Corporation only. This claim fails under Rule 12(b)(6) (and with it, the rest of the complaint) for four separate reasons. *First,* the complaint studiously ignores the undisputed fact that individuals make a voluntary choice both to enter, and remain a participant in, the programs provided by the ARCs. *Second,* Named Plaintiffs fail to plead facts showing they engaged in "labor or services" as understood by Section 1589(a). *Third,* Named Plaintiffs fail to plead necessary facts showing that the Illinois Corporation made any unlawful threats under section 1589(a). *Fourth,* Named Plaintiffs fail to allege that they performed work at the Illinois Corporation's ARCs *because of* any purported threats made by Illinois Corporation employees. Because of Named Plaintiffs' failure to allege causation, the claim also fails on Article III standing grounds.

**A.    Named Plaintiffs fail to state a claim for Count One under Rule 12(b)(6).**

The TVPRA is concerned primarily with "victim[s] of involuntary servitude or [ ] victim[s] of international human trafficking." *Lopez v. Miller*, Case No. 17-CV-2268, 2017 WL 11472556 at *2 (C.D. Ill. Nov. 29, 2017); *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) ("Section 1589 was passed to implement the Thirteenth Amendment against slavery or involuntary servitude.") (internal quotation marks and citations omitted). Section 1589(a) of the TVPRA makes it unlawful for a defendant to "knowingly provid[e] or obtain[] the labor or services of a person . . .

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C. § 1589(a).

A section 1589(a) claim boils down to three elements. To state a claim under Section 1589(a), Named Plaintiffs must allege facts showing (1) that they engaged in "labor or services" at the Illinois Corporation's ARCs; (2) that the Illinois Corporation engaged in unlawful means of coercion as delineated by the statute and (3) that those unlawful means caused them to render labor or services. 18 U.S.C. § 1589(a); *see also Muchira v. Al-Rawaf*, Civil Action No. 1:14-cv-770, 2015 WL 1787144 at *8 (E.D. Va. Apr. 15, 2015) (affirming causation element of a 1589(a) claim and dismissing plaintiffs' TVPRA claim on motion for summary judgment where she failed to show that "she remained in Defendants' employment *because of* threats of serious harm . . . .") To satisfy Rule 12(b)(6) on these elements, the complaint need not set forth "detailed factual allegations," but must at least state "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Named Plaintiffs fail to plausibly allege any of these elements. To begin, the complaint does not plausibly allege that individuals are initially "forced" to participate in an ARC program. And Named Plaintiffs nowhere allege (nor could they) that the Illinois Corporation engaged in any force, physical restraint, or threats thereof to keep them as participants in the ARCs. Their complaint is instead based on the faulty notion that Illinois Corporation threatened them with "serious harm" or "threatened abuse of law or legal process" if they did not abide by ARC program requirements.

To survive a motion to dismiss, such allegations require a plaintiff to plead facts sufficiently plausible to nudge "their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. 544, 570. Named Plaintiffs have not made that showing with respect to either the "threats of serious harm" or "threatened abuse of law" elements of a 1589 claim. "Serious harm" for purposes of

section 1589 means "any harm, whether physical or nonphysical . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." And "threatened abuse of law or legal process" for purposes of section 1589 means "threatened abuse of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c).

A fair reading of the complaint compels the conclusion that the allegations supporting these elements of the claim are nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," allegations that "do not suffice" to adequately state a claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-9 (2009). For example, Named Plaintiffs do not specify who allegedly threatened them with "serious harm" or "abuse of law or legal process," when the threats allegedly took place, or where they allegedly occurred. *See, e.g.* (Compl. ¶¶ 170-71; 192; 213-14; 241); *see also Gaines v. Dart*, Case No. 20-CV-03487, 2021 WL 394814 at *2 (N.D. Ill. Feb. 4, 2021) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (internal quotation marks and citations omitted).

> **1.** **Named Plaintiffs' have not pleaded facts showing that they engaged in "labor or services" as required by Section 1589(a).**

Count 1 fails from the start because Named Plaintiffs do not plead sufficient facts showing that they engaged in "labor or services" at the Illinois Corporation's ARCs. 18 U.S.C. § 1589(a) (for a Section 1589(a) violation, defendant must "knowingly provid[e] or obtain[] the *labor or services* of a person . . . .") (emphasis added).

Not all "work" performed by an individual is considered "labor or services" under Section 1589(a). *U.S. v. Toviave*, 761 F.3d 623, 630 (6th Cir. 2014) (holding that section 1589(a) does not apply to a person *in loco parentis* requiring children to perform certain household chores under threats of physical harm). Courts have interpreted the terms "labor" or "services" under Section 1589(a) as follows: "Labor" means the "expenditure of physical or mental effort esp. when fatiguing, difficult, or compulsory," and "service" means "the performance of work commanded or paid for by another." *U.S. v. Callahan*, 801 F.3d 606, 620 (6th Cir. 2015) (citing Webster's Third New International Dictionary (1993)); *United States v. Marcus*, 628 F.3d 36, 45 n.10 (2d Cir. 2010) (same).

Activities that might be characterized as "work," performed exclusively or primarily for one's own benefit, do not meet these definitions of "labor" or "services" under Section 1589(a). *See Saraswat v. Business Integra, Inc.*, 15-CV-4680, 2019 WL 1865193 at *7 (E.D. N.Y. Apr. 25, 2019) (holding that "work" performed, not for defendant's benefit, but for plaintiff's own benefit, defeated plaintiff's Section 1589(a) claim, as plaintiff did not perform "labor" or "services" within the meaning of the statute).

The Ninth Circuit has recognized this distinction in a leading case involving The Salvation Army, in which the court concluded that the work-therapy performed by participants at Salvation Army ARCs is "solely rehabilitative" for the participant's own benefit. *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) (explaining same in the context of an FLSA case). Work-therapy is not performed with an aim of benefitting The Salvation Army, but rather is performed to give participants "a sense of self worth [and] accomplishment" and to enable them to "overcome [their] drinking problems . . . ." *Id*.

Named Plaintiffs have not alleged facts showing why *Strickland's* understanding of the ARCs' work therapy does not apply here. Named Plaintiffs admit that they voluntarily opted to

participate in the ARCs. Courts have held that "work" performed as part of voluntary choice to participate in a rehabilitation program in lieu of jail cannot be grounds for claims under the Thirteenth Amendment, the very constitutional provision upon which Section 1589(a) is based. *Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918, 2015 WL 5671902 at *6 (S.D.N.Y. Sept. 25, 2015). Such "work" is for the participant's benefit (*id*. at *8) and cannot be grounds for a cognizable "forced labor" claim. *See Saraswat*, 2019 WL 1865193 at *7-8.

> **2.** **Named Plaintiffs have not pleaded that the Illinois Corporation engaged in unlawful coercion in violation of Section 1589(a).**
>
> > **a.** **Named Plaintiffs' asserted "threats" do not amount to "threats of serious harm" or unlawful means of coercion under Section 1589(a).**

The "threats" that Named Plaintiffs assert, even if sufficiently pleaded (which they are not), do not amount to "threats of serious harm" or unlawful means of coercion as a matter of law under Section 1589(a).

*First*, the claims of Named Plaintiffs Lewis and Page ("Walk-In Plaintiffs") fail because courts have consistently held that "warnings of adverse but legitimate consequences" are not "threats of serious harm" under the TVPRA. *Headley v. Church of Scientology Intern.*, 687 F.3d 1173, 1180 (9th Cir. 2012) (explaining that the law distinguishes between "[i]mproper threats of coercion and permissible warnings of adverse but legitimate consequences"); *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004) (same).

Read as a whole, the complaint alleges that the Illinois Corporation's ARCs furnish participants with food and shelter, as long as they follow program rules, including engagement in the work-therapy aspect of the programs. (*See, e.g.*, Compl. ¶¶ 75, 93). Walk-In Plaintiffs Lewis and Page assert (without any factual detail) that the Illinois Corporation threatened their loss of "food and shelter" if they did not engage in work therapy. (*See, e.g.*, Compl. ¶¶ 192, 241). These general assertions are an unavailing attempt to avoid the obvious fact that "food and shelter" *is part*

*and parcel of the ARC program*. Walk-In Plaintiffs' assertions thus amount to an innocuous allegation: The Illinois Corporation told them if they did not engage in work therapy (like any other programmatic aspect of the ARC program), they could no longer participate in, and reap the benefits of, the ARC programs.

This is not an illegal threat under the TVPRA and does not in any way suggest "serious harm" as contemplated by the statute. For a defendant to engage in unlawful means of coercion, it must threaten some serious *collateral* harm to the plaintiff outside of mere disassociation with plaintiff. *See Headley*, 687 F.3d at 1180 (holding the same). In *Headley*, the threat of banishment from a church was insufficient to constitute unlawful coercion under section 1589(a). Similarly, the Illinois Corporation, a religious and non-profit organization, is entitled to give "legitimate warning[s]" of expulsion to ARC participants if they do not follow program rules. *Id.*[9]

*Second*, Named Plaintiffs Taylor and Burkhart ("Justice-Referred Plaintiffs") do not allege an unlawful means of coercion because their purported "threats" of re-incarceration for failure to participate in ARC program requirements do not constitute "serious harm" or a "threatened abuse of law or legal process" under section 1589(a). Section 1589(a) is "intended to address serious trafficking." *Muchira*, 850 F.3d at 618-19 (internal quotation marks and citations omitted). A threatened harm must be "sufficiently serious" to compel [a] person to remain…when [he or she] otherwise would have left." *Id.* Named Plaintiff Taylor admits leaving the ARC program, after only "four or five weeks" *on his own volition*. (Compl. ¶ 217). This allegation alone shows that he and Named Plaintiff Burkhart had a "viable exit option" and negates any reasonable inference that the complaint plausibly alleges threats that were sufficiently serious "to compel a reasonable person of

---

[9] To hold otherwise may infringe upon the Illinois Corporation's First Amendment rights. *Headley*, 687 F.3d at 1180 (noting that under the First Amendment's free exercise clause, "[a] church is entitled to stop associating with someone who abandons it").

the same background . . . to continue performing labor or services in order to avoid incurring that harm." *Muchira*, 850 F.3d at 620; *see also* 18 U.S.C. § 1589(c).

Justice-Referred Plaintiffs Taylor and Burkhart also fail to allege a valid section 1589(a) claim for the additional reason that the TVPRA cannot be validly interpreted to apply to participation in a rehabilitation program that is judicially mandated as part of a criminal sentence.[10]

Congress passed the TVPRA, not pursuant to its powers under the Constitution's commerce clause, but instead pursuant to its enforcement powers under the Thirteenth Amendment. *See Owino v. CoreCivic, Inc.*, 2018 WL 2193644 at *8 (S.D. Cal. 2018) ("Congress enacted the TVPRA pursuant to its power to enforce the Thirteenth Amendment."); *Crowe v. Director, TDCJ-CID*, 2018 WL 7814730 at *2 (E.D. Tex. Sept. 18, 2018), *report and recommendation adopted*, No. 6:16cv491, 2019 WL 1274787 (E.D. Tex. Mar. 19, 2019)  ("The Forced Labor Act was 'passed pursuant to Congress's powers under the Thirteenth Amendment . . . to outlaw modern manifestations of slavery and involuntary servitude'").

The Thirteenth Amendment explicitly exempts from its reach labor as punishment for those duly convicted of a crime. U.S. Const. Amend. 13, sec. 1 ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.")

Although under its enforcement powers Congress may pass laws prohibiting a "broader swath of conduct" beyond the text of the Reconstruction Amendments, what it may not do is

---

[10] For similar reasons, the complaint likely fails as a matter of subject jurisdiction for the Justice-Referred Plaintiffs under the *Rooker-Feldman* doctrine because Justice-Referred Plaintiffs are effectively waging a collateral attack on their state-court criminal sentencing orders. *See, e.g., Copeland v. C.A.A.I.R.*, Case No. 17-CV-564-TCK-JFJ, ECF No. 237 (N.D. Okla. Dec. 10, 2020) (applying *Rooker-Feldman* to bar TVPRA claims of rehab participants who were judicially ordered to rehab program) (currently on appeal to the U.S. Tenth Circuit Court of Appeals at Docket # 21-5024). Defendants anticipate revisiting this argument with the Court once they are able to obtain the relevant state-court sentencing orders pertaining to Named Plaintiffs Taylor and Burkhart.

"substantively redefine" what is prohibited by the Amendments themselves. *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003) (addressing the Fourteenth Amendment); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 440 (1968) (Congress's enforcement powers under the Thirteenth Amendment are tied to the "badges and incidents" of prohibited slavery and involuntary servitude). Accordingly, several federal courts have explained that the TVPRA does "not apply to work specifically excepted by Section 1 of the Thirteenth Amendment," which exempts from its reach work as part of a criminal sentence. *Crowe*, 2018 WL 7814730 at *2; *Manley v. Indiana Dept. of Correction*, No. 3:13-CV-1308 JD, 2015 WL 4077243 at *1 (N.D. Ind. July 6, 2015) (same).

Justice-Referred Plaintiffs Taylor and Burkhart both allege that they were ordered to participate in the ARCs[11] by judicial referral as part of their state court criminal convictions or serve their convictions in jail. (Compl. ¶¶149-151, 198-200). Because the TVPRA does not apply, nor can it validly apply, in these circumstances, those Plaintiffs have no right to relief under section 1589(a). *Crowe*, 2018 WL 7814730 at *2; *see also Lopez,* 2017 WL 11472556 at *2 (holding that TVPRA did not apply where plaintiff was "a convicted criminal," as the "Thirteenth Amendment excludes convicted criminals from the prohibition of involuntary servitude").

> **b.** **The complaint does not plead facts plausibly showing that the Illinois Corporation engaged in unlawful means of coercion.**

Federal courts dismiss section 1589(a) claims where a complaint fails to set forth particular facts about a purported threat beyond "conclusory assertions." *Novoa v. GEO Group, Inc.*, Case No. EDCV 17-2514 JGB, 2018 WL 3343494 at *14 (C.D. Cal. June 21, 2018) (dismissing section 1589(a) claim where plaintiff failed to "provide more than conclusory assertions" to plead the "threat" upon which his claim was based); *Kelsey v. Goldstar Estate Buyers Corp.*, No. 3:13-cv-00354-HU, 2014 WL 1155253 at *6 (D. Or. March 21, 2014) (holding that "regurgitation of the

---

[11] The work therapy component of the ARCs is publicly known. *See* https://www.salvationarmyusa.org/usn/rehabilitation (cited in complaint at Compl. ¶ 5, fn. 1).

statutes' wording woven together with conclusory statements" is not sufficient to state a section 1589(a) claim.

Named Plaintiffs Taylor and Burkhart (the "Justice-Referred Plaintiffs") baldly assert that employees of the Illinois Corporation threatened them with "parole violation[s]" and that "they would go to jail" if they did not follow the Illinois Corporation's work-therapy instructions. (*See, e.g.*, Compl. ¶¶ 168-171, 213-214). Named Plaintiffs Lewis and Page (the "Walk-In Plaintiffs") likewise make the conclusory assertion that employees of the Illinois Corporation threatened that they would "lose access to food and shelter" if they did not perform work-therapy at the Illinois Corporation's facilities. (*See, e.g.*, Compl. ¶¶ 192, 241).

None of the Named Plaintiffs allege the date, time, or place of the alleged "threats," nor do they identify the individual or individuals who purportedly made them. Named Plaintiffs provide no specification as to what was communicated when the "threats" were made, or the means as to how they were communicated.

Named Plaintiffs' allegations are thus totally devoid of any factual detail and insufficient to plausibly state that the Illinois Corporation engaged in "unlawful" threats to sustain Count 1. *See, e.g., Novoa*, 2018 WL 3343494 at *14 (dismissing section 1589(a) claim where plaintiff did "not describe[] when he was threatened or who threatened him"); *Roman v. Tyco Simplex Grinnell*, Case No. 8:16-cv-3449-T-33AEP, 2017 WL 2427251 at *5 (M.D. Fla. June 5, 2017) (dismissing section 1589 claim with prejudice where plaintiff failed to allege "who threatened him," "how he was threatened," and his admission that he was free to leave and acknowledgment that he left voluntarily); *Kelsey*, 2014 WL 1155253 at *3 (vague threats that defendant would withhold "food, shelter, money, and/or continued employment" are insufficient to state a section 1589(a) claim); *see also Ashcroft*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement") (internal quotation marks and citations omitted).

### 3. Named Plaintiffs have not alleged that they engaged in work therapy *because of* any purported threats by the Illinois Corporation.

The third element of a section 1589(a) claim requires Named Plaintiffs to plead that the Illinois Corporation's purported threats caused them to render labor. *See Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 794 (E.D. Mich. 2021) (explaining that the "the harm or threat of harm must be one that compels the victim to remain when they otherwise would have left.")

Walk-In Plaintiffs Lewis and Page admit that they "walked in" to their respective ARCs voluntarily. Justice-Referred Plaintiffs Taylor and Burkhart chose to participate in their respective programs as part of their criminal sentences in lieu of jail time. None of the Named Plaintiffs allege that they were lured to the ARCs by either Defendant or that they were unaware that there was a work-therapy component when they decided to participate in the program.

Named Plaintiffs assert, that once voluntarily at their respective ARCs, they were exposed to "threats" if they did not engage in work therapy, but nowhere do they allege that they believed such "threats" or that the "threats" caused them to remain participants in an ARC operated by the Illinois Corporation. There were myriad other reasons why they may have remained participants there, including that the ARCs provided them with a robust rehabilitation program, including counseling, in addition to food and lodging, generally free of charge, and for the Justice-Referred Plaintiffs, an alternative to prison. (Compl. ¶ 5, n. 1); *see also Xydakis v. Target, Inc.*, 333 F. Supp. 2d 683, 685 (N.D. Ill. 2004) (complaint "must allege all of the elements necessary to recover").

Named Plaintiffs' failure to allege a causal link between their work therapy at the ARCs and the Illinois Corporation's purported "threats" is fatal to their claim under section 1589(a). *See, e.g., Muchira v. Al-Rawaf*, Civil Action No. 1:14-cv-770, 2015 WL 1787144 at *8 (E.D. Va. Apr. 15, 2015) (dismissing plaintiffs' TVPRA claim on motion for summary judgment where she failed to show that "she remained in Defendants' employment because of threats of serious harm…");

*McCullough v. City of Montgomery*, Case No. 2:15-cv-463-RCL, 2020 WL 3803045 at \*9 (M.D. Ala. July 7, 2020) (plaintiffs' failure to show that they worked because of defendant's purported unlawful means was grounds to dismiss claim at summary judgment).

### B. Named Plaintiffs also fail to allege Article III standing for Count One under Rule 12(b)(1).

Article III standing is properly addressed under Rule 12(b)(1) as an issue of subject matter jurisdiction. *Deiker v. TrueAccord Corp.*, No. 1:20-CV-00669, 2021 WL 4502138, at \*2 (N.D. Ill. Sept. 30, 2021) ("subject matter jurisdiction . . . includes Article III's requirement of standing") (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). Named Plaintiffs' failure to allege a causal link between their work at the ARCs and Illinois Corporation's purported "threats" also dooms their Article III standing.

At the pleading stage, standing doctrine requires that plaintiffs plead facts sufficient to allege "an injury in fact that is traceable to the defendant's conduct . . . . " *Cassillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). The principle of traceability—the relationship between a plaintiff's asserted injury and defendant's purported conduct—is one of "but for" causation. *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018) (explaining that Article III standing requires "but-for causation"). Plaintiffs must allege facts showing that "but for" defendants' purported illegal conduct, they would not have suffered injury. *Kowalski v. Cook County Officers Electoral Bd.*, Case No. 16-cv-1891, 2016 WL 4765711 at \*3 (N.D. Illinois Sept. 13, 2016) (same).

Named Plaintiffs do not allege that they participated in work therapy at the Illinois Corporation's ARCs because of the Illinois Corporation's purported "threats." As such, they fail to allege Article III standing, and their section 1589(a) claim should be dismissed for lack of subject matter jurisdiction. *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 845-46 (N.D. Ill. 2021) (dismissing plaintiff's complaint for lack of Article III standing where plaintiff failed to plead facts

showing that the defendant "directly caused any of Plaintiff's injuries" or that the defendant

"contributed to any of Plaintiff's alleged injuries").

**III.    The Complaint's Remaining Counts Two Through Five Should Be Dismissed Because They Are Derivative of Count One, Which Is Not a Valid Claim.**

Counts Two through Five assert the following additional claims against both Defendants:

- Count Two under section 1589(b) asserts that Defendants "knowingly benefited" from forced labor;

- Count Three under section 1590(a) asserts that Defendants "knowingly recruited" forced labor;

- Count Four under section 1594(b) asserts that Defendants "conspired with on another" to "knowingly recruit" and "knowingly benefit" from forced labor; and

- Count Five under section 1594(a), asserts that Defendants "attempted" to violate sections 1589 and 1590 of the TVPRA.

Absent a validly stated forced labor claim, these claims must also fail. *See, e.g.*, *Muchira*, 2015 WL 1787144 at *8 (dismissing claims under sections 1590, 1592, 1594 and 1595, while explaining that such claims require an underlying forced labor claim to proceed); *McCullough*, 2020 WL 3803045 at *10 (explaining that a claim for "benefiting" from labor forced labor requires, first, a predicate forced labor claim); *Konstantinova v. Garbuzov*, No. 2:21-CV-12795 (WJM), 2021 WL 5881670 *6 (D.N.J. Dec. 13, 2021) ("Plaintiff's contention that [defendant] attempted to and conspired to violate §§ 1584, 1589, 1590, or 1595 cannot succeed as a matter of law given the Court's determination that Plaintiff has not stated a claim for violation of the predicate charges.").

Count Five, Named Plaintiffs' "Attempted Trafficking," claim also fails because it is not a basis for a civil cause of action under 18 U.S.C. § 1595(a). Section 1594(a) states that "[w]hoever attempts to violate [the TVPRA] shall be punishable in the same manner as a completed violation . . . ." But Section 1595(a), the TVPRA's civil remedies provision, provides a civil remedy for only

"*violation[s]*" of the TVPRA—not "attempted" ones. 18 U.S.C. § 1595(a) ("An individual who is a victim of *a violation of this chapter* may bring a civil action against the perpetrator . . . .").

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants respectfully request that the complaint be dismissed in its entirety:

- The Court lacks personal jurisdiction over the National Corporation, and the Nationwide Class claims should, accordingly, be dismissed, and the Nationwide Classes stricken. Furthermore, Named Plaintiffs have failed to state any plausible claims against the National Corporation.

- Named Plaintiffs have failed to state, and plead standing for, an underlying forced labor claim under 18 U.S.C. §1589(a) (Count One).

- In the absence of an underlying forced labor claim, the complaint's derivative Counts Two through Five should likewise be dismissed.

Dated: January 7, 2022

Respectfully submitted,

s/Amy M. Gibson

Amy M. Gibson, ARDC # 6293612
agibson@agdglaw.com
Maryam Arfeen, ARDC #6316640
marfeen@agdglaw.com
ARONBERG GOLDGEHN
330 North Wabash Avenue – Suite 1700
Chicago, Illinois 60611
312-828-9600

Thomas P. Gies
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 624-2690

Admitted *Pro Hac Vice*

Attorneys for Defendants