# EXHIBIT
# 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

DARREL TAYLOR, CHARLES LUCAS,
KEVIN LEWIS, DARRELL BURKHART,
and LEEVERTIS PAGE, individually and on
behalf of all others similarly situated,

                           Plaintiffs,

             - against -

THE SALVATION ARMY NATIONAL
CORPORATION, and THE SALVATION
ARMY d/b/a CENTRAL TERRITORY OF
THE SALVATION ARMY,

                         Defendant.

Case No. 1:21-cv-06105

Honorable John Robert Blakey

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**RULE 12(b)(1), (2) AND (6) MOTION TO DISMISS**
**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

I.     SUMMARY OF THE FAC'S ALLEGATIONS ........................................................ 3

ARGUMENT ....................................................................................................................... 5

I.     NATIONAL IS NOT A PROPER DEFENDANT. ...................................................... 5

    A.    National Should Be Dismissed For Lack Of Personal Jurisdiction. ................... 5

         1.    This Court does not have general jurisdiction over National. ................. 6

         2.    This Court does not have specific jurisdiction over National. ................ 7

    B.    National Should Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim. ...................................................................................................... 11

II.    COUNT ONE SHOULD BE DISMISSED UNDER RULES 12(B)(6) AND 12(b)(1) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1589(a) OF THE TVPRA, AND DO NOT ALLEGE STANDING. .................................................................................................................. 12

    A.    Plaintiffs Fail To State A Claim For Count One Under Rule 12(b)(6). ............. 13

         1.    Plaintiffs' have not pleaded facts showing that they engaged in "labor or services" as required by Section 1589(a). ............................. 14

         2.    Plaintiffs have not pleaded that Central engaged in unlawful coercion in violation of Section 1589(a). ............................................... 15

              a.    Plaintiffs' asserted "threats" do not amount to "threats of serious harm" or "threatened abuse of law or legal process" under Section 1589(a). ................................................... 16

              b.    The complaint does not plead facts plausibly showing that Central engaged in unlawful means of coercion. ................ 20

         3.    Plaintiffs have not alleged that they engaged in work therapy *because of* any purported threats by Central. ......................................... 21

    B.    Plaintiffs Also Fail To Allege Article III Standing For Count One Under Rule 12(b)(1). .................................................................................................... 22

III.   THE FAC'S REMAINING COUNTS SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE THEY ARE DERIVATIVE OF COUNT ONE, WHICH IS NOT A VALID CLAIM. .......................................................................... 23

CONCLUSION .................................................................................................................. 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*,
    692 F.3d 638 (7th Cir. 2012) ................................................................................. 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 21

*Ashley v. United States*,
    Case No. 1:20-CV-0154-SWS/MLC, 2020 WL 8996805 (D.N.M. Nov. 2, 2020) ............... 16

*Beaulieu v. Ashford Univ.*,
    529 F. Supp. 3d 834 (N.D. Ill. 2021) .................................................................... 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 13, 14

*Bennett v. Frank*,
    395 F.3d 409 (7th Cir. 2005) ................................................................................. 1

*BNSF Ry. v. Tyrell*,
    137 S. Ct. 1549 (2017) ......................................................................................... 6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    137 S. Ct. 1773 (2017) ....................................................................................... 10

*Brook v. McCormley*,
    873 F.3d 549 (7th Cir. 2017) ................................................................................. 7

*C.T. v. Red Roof Inns, Inc.*,
    Case No. 2:19-CV-5384, 2021 WL 2942483 (S.D. Ohio July 1, 2021) .................................. 6

*Camasta v. Omaha Steaks Int'l, Inc.*,
    No. 12-CV-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ........................................... 9

*Cassillas v. Madison Avenue Associates, Inc.*,
    926 F.3d 329 (7th Cir. 2019) ............................................................................... 22

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express
    World Corp*.
    230 F.3d 934 (7th Cir. 2000) ................................................................................. 8

*Chavez v. Church & Dwight Co.*,
    No. 17 C 1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) ............................................ 10

*Convergence Aviation, Ltd. v. United Technologies Corp.*,
No. 10-c-2021, 2012 WL 698391 (N.D. Ill. Feb. 29, 2012) .................................................... 9

*Copeland v. C.A.A.I.R.*,
Case No. 17-CV-564-TCK-JFJ, ECF No. 237 (N.D. Okla. Dec. 10, 2020), *appeal filed*, 21-5024 (10th Cir.).................................................................................................... 20

*Cowen v. Bank United of Texas*,
70 F.3d 937 (7th Cir. 1995)...................................................................................................... 5

*Crowe v. Director, TDCJ-CID*,
2018 WL 7814730 (E.D. Tex. Sept. 18, 2018), *report and recommendation adopted*, No. 6:16cv491, 2019 WL 1274787 (E.D. Tex. Mar. 19, 2019) ........................ 19, 20

*Curry v. Revolution Labs., LLC*,
949 F.3d 385 (7th Cir. 2020)................................................................................................... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................................................. 6, 7

*Denberg v. U.S. R.R. Retirement Bd.*,
696 F.2d 1193 (7th Cir. 1983)............................................................................................... 10

*Fochtman v. DARP, Inc.*,
Case No. 5:18-CV-5047, 2018 WL 3148113 (W.D. Ark. June 27, 2018).............................. 18

*Greene v. Mizuho Bank, Ltd.*,
169 F. Supp. 3d 855 (N.D. Ill. 2016) ................................................................................. 5, 10

*Headley v. Church of Scientology Intern.*,
687 F.3d 1173 (9th Cir. 2012)........................................................................................... 17, 18

*Hilani v. Greek Orthodox Archdiocese of America*,
863 F. Supp. 2d 711 (W.D. Tenn. 2012) ................................................................................. 9

*Jensen v. United States Tennis Assoc.*,
Case No. 20-2422-JWL, 2020 WL 6445117 (D. Kans. Oct. 30, 2020) ........................... 11, 12

*John Roe I v. Bridgestone Corp.*,
492 F. Supp. 2d 988 (S.D. Ind. 2007) .................................................................................. 19

*Jones v. Alfred H. Mayer Co.*,
392 U.S. 409 (1968) .............................................................................................................. 19

*Kelsey v. Goldstar Estate Buyers Corp.*,
No. 3:13-cv-00354-HU, 2014 WL 1155253 (D. Or. March 21, 2014)............................. 20, 21

*Konstantinova v. Garbuzov*,
No. 2:21-CV-12795 (WJM), 2021 WL 5881670 (D.N.J. Dec. 13, 2021) ............................. 24

*Kowalski v. Cook County Officers Electoral Bd.*,
Case No. 16-cv-1891, 2016 WL 4765711 (N.D. Illinois Sept. 13, 2016) ............................. 23

*Lopez v. Miller*,
Case No. 17-CV-2268, 2017 WL 11472556 (C.D. Ill. Nov. 29, 2017) ........................... 12, 20

*Manley v. Indiana Dept. of Correction*,
No. 3:13-CV-1308 JD, 2015 WL 4077243 (N.D. Ind. July 6, 2015) ................................... 19

*Martinez-Rodriguez v. Giles*,
391 F. Supp. 3d 985 (D. Idaho 2019) ................................................................................... 16

*McCullough v. City of Montgomery*,
Case No. 2:15-cv-463-RCL, 2020 WL 3803045 (M.D. Ala. July 7, 2020) .................... 22, 23

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc.*,
623 F.3d 440 (7th Cir. 2010) .................................................................................................. 6

*Mohammed v. Uber Technologies, Inc.*,
237 F. Supp. 3d 719 (N.D. Ill. 2017) ..................................................................................... 8

*Muchira v. Al-Rawaf*,
850 F.3d 605 (4th Cir. 2017) .......................................................................................... 16, 17

*Muchira v. Al-Rawaf*,
Case No. 1:14-cv-770, 2015 WL 1787144 (E.D. Va. Apr. 15, 2015) ............................. 22, 23

*Nevada Dep't of Hum. Res. v. Hibbs*,
538 U.S. 721 (2003) .............................................................................................................. 19

*Outlaw v. City of Cahokia*,
Case No. 16-cv-456-JPG, 2017 WL 1491836 (S.D. Ill. Apr. 26, 2017) .................................. 9

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*,
513 F. Supp. 3d 761 (E.D. Mich. 2021) .......................................................................... 12, 21

*Robb v. Connecticut Bd. Of Veterinary Med.*,
157 F. Supp. 3d 130 (D. Conn. 2016) ..................................................................................... 9

*Roman v. Tyco Simplex Grinnell*,
Case No. 8:16-cv-3449-T-33AEP, 2017 WL 2427251 (M.D. Fla. June 5, 2017) ................. 21

*S.J. v. Choice Hotels Internat'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............................................................................. 11, 12

*Saraswat v. Business Integra, Inc.*,
15-CV-4680, 2019 WL 1865193 (E.D. N.Y. Apr. 25, 2019) ................................................ 15

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
902 F.3d 735 (7th Cir. 2018) ................................................................................................. 23

*U.S. v. Toviave*,
    761 F.3d 623 (6th Cir. 2014).............................................................................. 14, 19

*United States v. Bradley*,
    390 F.3d 145 (1st Cir. 2004) ..................................................................................... 17

*Vaughn v. Phoenix House Programs of New York*,
    No. 14-CV-3918, 2015 WL 5671902 (S.D.N.Y. Sept. 25, 2015) .................................... 15, 18

*Weller v. Flynn*,
    312 F. Supp. 3d 706 (N.D. Ill. 2018) (Blakey, J.) ....................................................... 8

*Williams v. Rohm and Haas Pension Plan*,
    No. NA02-C-0123-B/H, 2003 WL 22271111 .............................................................. 5

*Williams v. Strickland*,
    87 F.3d 1064 (9th Cir. 1996)..................................................................................... 14

*Wilson v. Nouvag GmbH*,
    No. 15-CV-11700, 2018 WL 1565602 (N.D. Ill. March 30, 2018) .............................. 9

*Xydakis v. Target, Inc.*,
    333 F. Supp. 2d 683 (N.D. Ill. 2004) ........................................................................ 22

## Statutes

18 U.S.C. § 1589(a)................................................................................. *passim*

18 U.S.C. § 1589(b) ..................................................................................... 3, 11, 23

18 U.S.C. § 1589(c) .................................................................................. *passim*

18 U.S.C. § 1590(a)........................................................................................ 4, 23

18 U.S.C. § 1594(a)................................................................................. 4, 23, 24

18 U.S.C. § 1594(b) ..................................................................................... 4, 23

18 U.S.C. § 1595(a)................................................................................. 3, 4, 11, 24

Ill. Comp. Stat. 5/2-209(c) .......................................................................... 6

Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000) ...................................... 1

**U.S. Constitution**

U.S. Const., Amend. 1 ................................................................................................ 18

U.S. Const., Amend. 5 ................................................................................................ 15

U.S. Const., Amend. 13 .............................................................................. 15, 18, 19, 20

U.S. Const., Amend. 14 .................................................................................. 6, 15, 19

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 12, 22

Fed. R. Civ. P. 12(b)(2) .............................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ............................................................................ 11, 12, 13, 23

Fed. R. Civ. P. 23(d) ................................................................................................ 10

**Other Authorities**

16 James Wm. Moore *et al., Moore's Federal Practice* § 108.42 (3d ed. 2011) ............................ 9

Defendants The Salvation Army National Corporation ("National") and The Salvation Army, an Illinois corporation[1] ("Central") (together, "Defendants") submit the following memorandum in support of their motion to dismiss the first amended class action complaint ("FAC") filed by plaintiffs Darrell Taylor, Charles Lucas, Kevin Lewis, Darrell Burkhart, and Leevertis Page (together, "Plaintiffs").

## INTRODUCTION

This lawsuit misappropriates the noble purpose of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Congress enacted the TVPRA to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000). The FAC—which complains about the work-therapy component of The Salvation Army's adult rehabilitation programs, a religious and charitable mission that exists only to serve adults struggling with life's spiritual and social challenges—has nothing remotely to do with slavery. The notion that individuals who participate in these rehabilitation programs could be viewed as victims of either human trafficking or forced labor within the meaning of the TVPRA is an "idea [that] was too outlandish to occur to anyone when the legislation was under consideration by Congress." *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005) (rejecting an analogous claim under the Fair Labor Standards Act ("FLSA")).

Defendants are two of several non-profit entities in the United States that conduct the religious and charitable activities of The Salvation Army, the worldwide religious and charitable organization, and a branch of the universal Christian Church. The Salvation Army preaches the Gospel, collects donations to benefit the poor, and each year provides life-changing rehabilitation

---

[1] The complaint incorrectly identifies Defendant The Salvation Army, an Illinois corporation as "The Salvation Army d/b/a Central Territory of The Salvation Army."

services through its Adult Rehabilitation Center programs ("ARCs"). The ARCs, which have operated for 70 years or more, serve thousands of people experiencing spiritual and social challenges who otherwise have been rejected by society. The ARCs welcome persons off the street, most often free of any charge, and provide them with food, clothing, lodging, religious instruction and counseling, while equipping them with structure to help them get their lives back on track.

The general criteria for participation in the ARCs are publicly available on The Salvation Army's website. Participants are required to have a Social Security card or birth certificate, pass a drug test upon arrival, attend worship classes and services, and be able to perform a work therapy assignment for eight hours a day. [2] Work therapy, *i.e.* performing basic assigned tasks at an ARC or its related thrift stores to develop vocational skills and habits under the supervision of counselors and others, is an integral component of the ARCs' religious mission to help program beneficiaries become productive members of society. Work therapy is only one element in the mix of services offered by the ARCs to help beneficiaries with their rehabilitation. One of the hallmarks of The Salvation Army's spiritually-based approach is that individuals make a voluntary choice to become participants in an ARC, and to remain in the program.

The FAC alleges that Defendants, entities established by the organization that many Americans associate with red kettles and toy drives during the holidays, have violated the TVPRA.[3] Plaintiffs allege that they suffered harm at one of the ARCs operated by Central in the 11 states that comprise The Salvation Army's Central Territory, because they performed rehabilitative work

---

[2] *See* https://www.salvationarmyusa.org/usn/rehabilitation (last visited Feb. 17, 2022) (cited in ¶ 5, fn. 1 of the FAC).

[3] This case is one of several ongoing actions in what appears to be a concerted nationwide campaign to attack the ARCs. Plaintiffs' lawyers in this case have also brought the following actions in other federal courts, attacking various aspects of the ARCs: *Tassinari, et. al. v. The Salvation Army National Corporation, et. al.*, Case No. 1:21-CV-10806 (D. Mass.) and *Tolbert, et. al. v. The Salvation Army, a Georgia Corporation*, Case No. 1:21-cv-04703-LMM (N.D. Ga.), which was filed the same day as the original complaint in this action. Each case alleges different, but equally baseless, causes of action.

therapy there, and were purportedly exposed to "threats" during their participation in the program.

The FAC, like the original complaint before it, is meritless and should be dismissed in its entirety:

- *First*, National should be dismissed as an improper defendant. This Court lacks personal jurisdiction over National because it has no material contacts with the state of Illinois that relate to Plaintiffs' claims. The putative nationwide classes should accordingly be stricken as they bring claims against National only. Plaintiffs furthermore fail to state a valid TVPRA venture liability claim against National, as the FAC fails to plead facts necessary to show that National "knew or should have known" of any purported "threats" made by Central.

- *Second*, the FAC does not validly plead an underlying forced labor claim (Count One) against either Defendant because Plaintiffs fail to plead facts showing that they performed forced "labor or services" as contemplated by the TVPRA, or that Central engaged in any "threats" or unlawful coercion. Plaintiffs further fail to plausibly allege that any of the vague "threats" actually *caused* them to "work" at an ARC. These failures also doom their Article III standing for the underlying forced labor claim.

- *Third*, the FAC's remaining claims (Counts Two through Five) fail because they require a plausibly valid forced labor claim to proceed, which is not alleged here.

## BACKGROUND

### I.    SUMMARY OF THE FAC'S ALLEGATIONS

The FAC is a putative class action, brought on behalf of participants in The Salvation Army's ARCs. It asserts four classes of individuals who participated in ARC programs: (1) a "Nationwide Walk-In Class"; (2) a "Nationwide Justice-Referred Class" (together, the "Nationwide Classes"); (3) a "Central Territory Walk-In Class"; and (4) a "Central Territory Justice-Referred Class" (together, the "Central Territory Classes").

All Plaintiffs and the two putative Central Territory Classes assert five causes of action against Central:

- **Count One**: a claim under 18 U.S.C. §§ 1589(a) and 1595(a) ("Obtaining Trafficked Labor");

- **Count Two**: a claim under 18 U.S.C. §§ 1589(b) and 1595(a) ("Benefitting from Trafficked Labor");

- **Count Three**: a claim under 18 U.S.C. §§ 1590(a) and 1595(a) ("Recruiting Trafficked Labor");

- **Count Four**: a claim under 18 U.S.C. §§ 1594(b) and 1595(a) ("Conspiracy to Recruit, Obtain, and Benefit from Trafficked Labor");

- **Count Five**: a claim under 18 U.S.C. §§ 1594(a) and 1595(a) ("Attempted Trafficking").

Plaintiffs Taylor, Lucas, and Lewis and the two putative Nationwide Classes also assert Counts Two through Five against National, but not Count One.

All five causes of action are tied to the same general assertions. Plaintiffs allege that the work-therapy aspect of the ARCs stems from National's policies, which they assert, govern the ARCs. Plaintiffs allege that they participated in one of Central's ARCs where they performed assigned tasks at an ARC or related thrift stores and, while there, were exposed to "threats" by employees of Central that were intended to keep them in the ARC program. (*See, e.g.*, FAC ¶¶ 191, 201-202, 217, 242, 258). Plaintiffs assert that they performed work therapy for "a small amount of cash" each week that was insufficient to build their savings and that they were subject to rules during their participation in the ARC program that placed "requirements on [their] time," and "limit[ed] their freedom of movement and communication," which made them "vulnerable" to the purported "threats." (*See, e.g.* FAC ¶¶ 192-95; 208-10; 222-24; 237-39; 255-57). The FAC divides Plaintiffs and the putative classes into two general groups: "Justice-Referred Plaintiffs" and "Walk-In Plaintiffs."

***"Justice-Referred Plaintiffs"***: Plaintiffs Taylor, Lucas, and Burkhart, on behalf of the two Justice-Referred Classes, assert that they participated in a Central ARC as part of their parole or prison release, and that they engaged in work therapy for "at least 8 hours a day, and at least 40 hours a week." (*See, e.g.*, FAC ¶¶ 189, 203, 233). These Plaintiffs assert generally that employees of Central used "threats" of jail, parole violations, or reports to probation officers if they did not work at Central's facilities. (*See, e.g.*, FAC ¶¶ 191, 212-13, 242).

*"Walk-In Plaintiffs"*: Plaintiffs Lewis and Page, on behalf of the two Walk-In Classes, assert that they voluntarily "walk[ed] in" off the street to participate in a Central ARC, and that they also engaged in work therapy. (*See, e.g.* FAC ¶¶ 215, 219, 245, 248). They assert that employees of Central used "threats" of denying them food, shelter, and access to the program if they did not work at the ARC or its related thrift stores. (*See, e.g.* FAC ¶¶ 217, 227, 247, 258).

Nowhere do any of the Plaintiffs state the date, time, place, or means of the purported "threats," or who specifically at Central made them. They do not allege that employees at Central told them that they could not leave the ARCs; nor do they allege being subject to force or physical restraint from leaving the ARCs at any time. Two Plaintiffs allege leaving and returning voluntarily to the ARC program as repeat participants. (FAC ¶¶ 215-245). Another Plaintiff has admitted to leaving his respective ARC after only "four to five weeks." (ECF No. 1, Compl. ¶ 217).

## ARGUMENT

A class action complaint lives or dies on the allegations of the named plaintiffs. *See, e.g., Williams v. Rohm and Haas Pension Plan*, No. NA02-C-0123-B/H, 2003 WL 22271111 at *4 (S.D. Ind. Sept. 26, 2003) ("If it is established that the plaintiff in a proposed class action fails to state a claim upon which relief can be granted, the complaint must be dismissed as to the unnamed plaintiffs unless another class representative is chosen.") (citing *Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir. 1995)). *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) (personal jurisdiction can "arise only from the claims of the named plaintiffs").

## I.     NATIONAL IS NOT A PROPER DEFENDANT.

### A.     National Should Be Dismissed For Lack Of Personal Jurisdiction.

The FAC fails to set forth well-pleaded facts to establish personal jurisdiction over National, and the claims against it should be dismissed under Rule 12(b)(2).

In federal question cases, "a federal court has personal jurisdiction over [a] defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc.*, 623 F.3d 440, 443 (7th Cir. 2010). The TVPRA does not authorize nationwide service for this action. *See C.T. v. Red Roof Inns, Inc.*, Case No. 2:19-CV-5384, 2021 WL 2942483 at *10 (S.D. Ohio July 1, 2021). This Court thus has personal jurisdiction over National only if it can be properly served in Illinois under Illinois' long-arm statute. *See Mobile Anesthesiologists*, 623 F.3d at 443 (citing Illinois long-arm statute 735 Ill. Comp. Stat. 5/2-209(c)).

The question of whether National can properly be served in Illinois under Illinois law is coextensive with whether personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *See* 735 Ill. Comp. Stat. 5/2-209(c); *see also Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020) ("We have held that the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause"). The Fourteenth Amendment permits personal jurisdiction over a defendant only where the defendant has sufficient "minimum contacts" with the forum, such that the defendant may reasonably expect to be "haled into court there." *Mobile Anesthesiologists*, 623 F.3d at 443-44 (internal citations and quotation marks omitted). There are two forms of personal jurisdiction— general and specific, neither of which exist here.

### 1. This Court does not have general jurisdiction over National.

General jurisdiction exists only where the defendant can be fairly said to be "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A corporation is "at home" in the forum if it is incorporated there or if its principal place of business is located there. *Id.*; *see also BNSF Ry. v. Tyrell*, 137 S. Ct. 1549, 1559 (2017) (personal jurisdiction lacking because the

defendant was not "at home" in Montana, notwithstanding having operations there). As the FAC

concedes, National is incorporated in New Jersey and is headquartered in Virginia. (FAC ¶ 27).

National is thus not "at home" in Illinois and general jurisdiction over it does not exist. *Daimler AG*,

571 U.S. at 127.

> **2.      This Court does not have specific jurisdiction over National.**

Specific jurisdiction requires that a defendant have "minimum contacts" with the forum, and

that plaintiffs' claims must "arise out of" or be "related to" those contacts. *Brook v. McCormley*,

873 F.3d 549, 552 (7th Cir. 2017) (internal quotation marks and citations omitted). Plaintiffs assert

that National has the following actual contacts with Illinois:

- National held a ceremony in Chicago, Illinois over a decade ago. (FAC ¶ 69);

- National scheduled a conference in Illinois, which was eventually cancelled due to COVID-19, but National, "by and through the National Advisory Board," drafted a handbook for the conference, which discusses ARCs. (FAC ¶¶ 70-73);

- National advertises Salvation Army programs and services nationwide, including in Illinois, to solicit donations and ARC participants (FAC ¶¶ 74-78);

- National solicits cash and physical donations nationwide, including in Illinois (FAC ¶¶ 80-81).

These asserted "contacts" in no way "directly relat[e]" to Plaintiffs' claims, as their central

allegation is that they were exposed to coercion and "threats" while participating in one of Central's

ARCs. *Brook*, 873 F.3d at 552 ("Specific jurisdiction requires a defendant's contacts with the forum

State to be *directly related* to the conduct pertaining to the claims asserted") (emphasis added).

Plaintiffs do not allege that National or its employees made any alleged "threats" to Plaintiffs, or

even knew about them. Plaintiffs do not allege that National had any contact with them, let alone

contact with them in Illinois. They do not allege that National is registered to do business in

Illinois—it is not. Plaintiffs do not allege that National's nationwide advertising or donation

solicitations induced them to participate in the ARCs. And they do not allege any facts supporting

their naked assertions that National "own[s], lease[s]...or operate[s]" ARCs and thrift stores in Illinois (FAC ¶¶ 102, 106). It does not. In any event, "assertions amount[ing] only to vague generalizations or unsupported allegations...are not enough to support personal jurisdiction." *Mohammed v. Uber Technologies, Inc.*, 237 F. Supp. 3d 719, 733 (N.D. Ill. 2017). In short, Plaintiffs fail to show that National "purposefully availed [itself] of the privilege of conducting business in Illinois" in a way that materially relates to their claims under the TVPRA. *Weller v. Flynn*, 312 F. Supp. 3d 706, 716 (N.D. Ill. 2018) (Blakey, J.).

The Court should also reject any suggestion that Central's jurisdictional contacts with Illinois can be imputed to National because they are both entities established by The Salvation Army (FAC ¶¶ 86-101). In the for-profit corporate context, the Seventh Circuit has firmly stated that "personal jurisdiction cannot be [based] on corporate affiliation...alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp*. 230 F.3d 934, 943 (7th Cir. 2000); *Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) ("Imputation . . . requires 'an unusually high degree of control' or that the subsidiary's 'corporate existence is simply a formality.'"). Plaintiffs do not allege facts overcoming the strong presumption against personal jurisdiction based on intra-corporate relationships. *See Abelesz*, 692 F.3d at 658 ("[T]he 'general rule' [is] that 'the jurisdictional contacts of a subsidiary corporation are not imputed to the parent.'")

Defendants are non-profit, religious organizations. The FAC offers no well-pleaded allegations showing that National exercises an "unusually high degree of control" over Central's operation of its ARCs, or that Central exists only to conduct the operations of National. Plaintiffs do not allege that National makes any decisions regarding the admission or expulsion of any participants in Central's ARC programs, or that its employees work at Central or have any hiring or

8

firing discretion over Central employees. And, nowhere do Plaintiffs allege that National issued a policy to "threaten" beneficiaries to secure their continued participation in the ARCs—the central premise of the FAC.

Instead, Plaintiffs broadly assert (mostly "upon information and belief" (*e.g.*, FAC ¶¶ 89-90)) that National "oversees" Central's "day-to-day operations" because, they assert with no specific factual support, National designed a mobile phone application for Salvation Army donation drivers, its employees occasionally visit Central, and National publishes guidance and policies for the operation of the ARCs. (FAC ¶¶ 86-90, 93).[4] But these allegations are inapposite to establishing personal jurisdiction over an out-of-state, non-profit religious organization. *See Hilani v. Greek Orthodox Archdiocese of America*, 863 F. Supp. 2d 711, 721-22 (W.D. Tenn. 2012) (holding that ecclesiastical structure, adherence to uniform regulations, and the provision of funds among member institutions in a larger religious body are inapposite to showing "control" for purposes of personal jurisdiction). And even if they were relevant, a parent corporation's "articulat[ion] of general policies" does not "rise to the level necessary to impute the subsidiary's jurisdictional contacts to the parent." 16 James Wm. Moore *et al., Moore's Federal Practice* § 108.42[3][b] (3d ed. 2011); *see also Convergence Aviation, Ltd. v. United Technologies Corp.*, No. 10-c-2021, 2012 WL 698391 (N.D. Ill. Feb. 29, 2012) (subsidiary's compliance with parent's "12 policy manuals"

---

[4] Plaintiffs also nakedly assert that National "participated" in Central's ARCs "by requiring [Central] to comply with its policies" and that National "controll[ed] the structure and essential terms and conditions of the ARC program." (FAC ¶¶ 62-66). These generalized assertions are devoid of any factual support and thus "insufficient to support personal jurisdiction." *Wilson v. Nouvag GmbH*, No. 15-CV-11700, 2018 WL 1565602, at * 2 (N.D. Ill. March 30, 2018) (citation omitted) ("Factual assertions that amount only to 'vague generalizations or unsupported allegations,' are insufficient to support personal jurisdiction."). Plaintiffs' unsupported assertions that "[t]here is an agreement" between National and Central (FAC ¶¶ 57, 98) are also wholly unavailing as they are, again, offered without any factual detail or support. *See Outlaw v. City of Cahokia*, Case No. 16-cv-456-JPG, 2017 WL 1491836, at * 5 (S.D. Ill. Apr. 26, 2017) (rejecting conclusory allegations of an "agreement" at the pleadings stage); *see also Robb v. Connecticut Bd. Of Veterinary Med.*, 157 F. Supp. 3d 130, 143 (D. Conn. 2016) (explaining that in the conspiracy or antitrust context "any conclusory allegation of an 'agreement' is not be accepted as true; the plaintiff must allege *facts* affirmatively demonstrating such an agreement") (emphasis in original).

insufficient to impute jurisdictional contacts to parent); *Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-CV-08285, 2013 WL 4495661, at *3 (N.D. Ill. Aug. 21, 2013) ("It is not enough that [one corporate affiliate] control, direct, and supervise [the other] to some extent.").

Moreover, while the FAC fails on its face to plead even a *prima facie* case for personal jurisdiction against National, the facts confirm there is no basis for it: National makes no decisions regarding the admission or expulsion of any participants in Central's ARC programs, and it does not have any hiring or firing discretion over Central employees. (Declaration of Randall Polsley ("Polsley Decl.") ¶¶ 5, 8). Instead, National acts only as an administrative coordinating office to support the activities of the four Salvation Army Territories in the United States. (Declaration of Kenneth O. Johnson, Jr. ("Johnson Decl.") ¶ 5). It does not operate any Salvation Army programs, including any ARCs, either in Illinois or elsewhere; nor does it have control over the operations of Central. (Johnson Decl. ¶¶ 5, 9); (Polsley Decl. ¶¶ 7-8). In sum, the FAC, as viewed from all angles, fails to establish that this Court has personal jurisdiction over National.

*****

Because the putative Nationwide Classes assert claims against National only, and this Court lacks personal jurisdiction over National, those classes should be stricken and their claims dismissed.[5] *See, e.g., Denberg v. U.S. R.R. Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983)

---

[5] The Court furthermore lacks personal jurisdiction over National for the claims of putative members in the asserted Nationwide Classes who did not participate in an Illinois ARC under *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017). There, the Supreme Court held that personal jurisdiction is required over each defendant for the claims of each plaintiff. Courts have since held that *Bristol-Myers Squibb* applies to personal jurisdiction over claims of absent class members. *See, e.g. Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018). Because there can be no personal jurisdiction over National in this Court with respect to any class members' claims that arise out of conduct in ARCs other than those operated in Illinois, the claims of putative members in the asserted Nationwide Classes who did not participate in an Illinois ARC should be stricken and their claims dismissed under Fed. R. Civ. P. 23(d).

(named plaintiffs must establish personal jurisdiction over defendant for corresponding claims of absent class members to survive); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d at 866 (same).

### B. National Should Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim.

National should be dismissed for a second, independent reason: Plaintiffs fail to state a claim against National as they fail to plead that National knew or should have known of the "threats" upon which the FAC is based.

Plaintiffs do not allege that National made any purported "threats" to keep them participating in the ARCs, and their implausible "forced labor claim" (Count One) is made against Central only. *See* Section II *infra*. Instead, Plaintiffs bring Counts 2 through 5, a set of derivative claims, against National under the theory that it "knowingly benefitted" from Plaintiffs' asserted "forced labor." (*See, e.g.*, FAC. ¶ 67). Such claims are known as "venture" liability claims. *See, e.g., Jensen v. United States Tennis Assoc.*, Case No. 20-2422-JWL, 2020 WL 6445117 at *5 (D. Kans. Oct. 30, 2020) (explaining the elements of "venture" liability under the TVPRA).

The TVPRA sets forth a civil action for venture liability at 18 U.S.C. § 1589(b) and 18 U.S.C. § 1595(a). Venture liability exists only where (1) a defendant knowingly benefitted financially or received anything of value; (2) from participation in an unlawful trafficking or forced labor venture; and (3) the defendant knew or should have known it was engaged in an unlawful trafficking or forced labor venture. *See S.J. v. Choice Hotels Internat'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020).

Plaintiffs' venture liability claims against National fail because they do not plausibly allege or plead facts showing that National knew or should have known of the purported "threats" upon which the FAC is based. Aside from baldly asserting that National "knew or should have known" that Central was "using [ ] forced labor" (FAC ¶ 68), Plaintiffs do not allege that employees of National were present when the alleged "threats" were made to them. They do not plead facts that

11

National had received notice of past unlawful "threats," that they, or anyone else, reported any "threats" to National, or that National otherwise had reason to know of such "threats."

Federal courts dismiss TVPRA venture liability claims like these where a plaintiff fails to plead facts necessary to show that a defendant "knew or should have known" that a plaintiff was being unlawfully trafficked or forced into labor. *See Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 794 (E.D. Mich. 2021) (dismissing complaint where plaintiffs failed to plead facts showing how defendants "knew or should have known" of purported threats against plaintiffs). *Jensen*, 2020 WL 6445117 at *5-6 (dismissing venture liability claim where plaintiff failed to plead that third-party tennis association knew or recklessly disregarded that she was being abused by coach); *Choice Hotels Internat'l, Inc.*, 473 F. Supp. 3d at 154 ("Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA"). Because the FAC does not make this showing, it fails to state a claim against National.

## II. COUNT ONE SHOULD BE DISMISSED UNDER RULES 12(B)(6) AND 12(B)(1) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1589(A) OF THE TVPRA, AND DO NOT ALLEGE STANDING.

The lynchpin of Plaintiffs' FAC is Count One, a forced labor claim under section 1589(a) of the TVPRA. This claim fails under Rule 12(b)(6) (and with it, the rest of the FAC) for three separate reasons. *First,* Plaintiffs fail to plead facts showing they engaged in "labor or services" as understood by Section 1589(a). *Second,* Plaintiffs fail to plead necessary facts showing that Central made any unlawful threats under section 1589(a). *Third,* Plaintiffs fail to allege that they performed work at Central's ARCs *because of* any purported threats made by Central employees. Because of Plaintiffs' failure to allege causation, the claim also fails on Article III standing grounds.

12

### A.    Plaintiffs Fail To State A Claim For Count One Under Rule 12(B)(6).

The TVPRA is concerned primarily with "victim[s] of involuntary servitude or [ ] victim[s] of international human trafficking." *Lopez v. Miller*, Case No. 17-CV-2268, 2017 WL 11472556 at *2 (C.D. Ill. Nov. 29, 2017). Section 1589(a) of the TVPRA makes it unlawful for a defendant to "knowingly provid[e] or obtain[] the labor or services of a person . . .

(1)    by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2)    by means of serious harm or threats of serious harm to that person or another person;

(3)    by means of the abuse or threatened abuse of law or legal process; or

(4)    by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C. § 1589(a).

A Section 1589(a) claim thus requires proof of three basic elements. Plaintiffs must allege facts showing (1) that they engaged in "forced labor or services" at an ARC; (2) that Central engaged in unlawful coercion as delineated by the statute; and (3) that the unlawful coercion caused them to render labor or services. 18 U.S.C. § 1589(a). To survive Rule 12(b)(6) on these elements, the complaint need not set forth "detailed factual allegations," but must at least state "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs fail to plausibly allege any of these elements. The FAC does not allege that individuals are initially "forced" to participate in an ARC program. Indeed, all Plaintiffs were either "walk-ins" or participants who elected to participate in an ARC program in lieu of incarceration. They admit that they were apprised of the program's work-therapy component during the ARCs' intake process, (*see, e.g.,* FAC ¶¶ 182, 201), and that they still elected to participate in the program after being so advised. Once there, Plaintiffs nowhere allege (nor could they) that Central engaged in any force, physical restraint, or threats thereof to keep them as participants in the ARCs. They do

not allege that Central told them they could not leave. The FAC is instead based on the faulty notion

that Central threatened Plaintiffs with "serious harm" or "threatened abuse of law or legal process"

if they did not abide by ARC program requirements. Plaintiffs' own allegations, however, show that

they could voluntarily leave the program.  One plaintiff has admitted that he left the program after

only "four to five weeks" (ECF. No. 1, Compl. ¶ 217), and two plaintiffs have admitted that they

returned to the program as repeat participants. (FAC ¶¶ 215, 245).

To survive a motion to dismiss, Plaintiffs need to plead facts sufficiently plausible to nudge

"their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. 544, 570. The

allegations supporting the three elements of Plaintiffs' 1589(a) claim fall well short of the line.

> **1.    Plaintiffs' have not pleaded facts showing that they engaged in "labor or services" as required by Section 1589(a).**

Count One fails from the start because Plaintiffs do not plead sufficient facts showing that

they engaged in "labor or services" at Central's ARCs. 18 U.S.C. § 1589(a) (for a Section 1589(a)

violation, defendant must "knowingly provid[e] or obtain[] the *labor or services* of a person . . . .")

(emphasis added).

Not all "work" performed by an individual is considered "labor or services." *U.S. v. Toviave*,

761 F.3d 623, 630 (6th Cir. 2014) (holding that section 1589(a) does not apply to a person *in loco*

*parentis* requiring children to perform certain household chores under threats of physical harm).

The Ninth Circuit recognized this distinction in a leading FLSA case involving a Salvation Army

entity, where the court concluded that the work-therapy performed by participants at an ARC is

"solely rehabilitative" for the participant's own benefit and thus not compensable "work." *Williams*

*v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996). Work therapy is not performed with an aim of

benefitting The Salvation Army, but rather is performed to give participants "a sense of self worth

[and] accomplishment" and to enable them to "overcome [their] drinking problems . . . ." *Id*.

Plaintiffs have not alleged facts showing why *Strickland's* understanding of the ARCs' work therapy does not apply here. Aside from vague allegations that Plaintiffs' participation in the ARCs reduced Central's payroll allowing it to "repurpose funds," the FAC is devoid of any well-pleaded facts showing how their participation primarily inured to Central's financial benefit and not their own rehabilitation. Plaintiffs admit that they voluntarily opted to commence their participation in the ARCs. Courts have held that "work" performed as part of a voluntary choice to participate in a rehabilitation program in lieu of jail cannot be grounds for claims under the Thirteenth Amendment, the constitutional provision upon which Section 1589(a) is based. *Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918, 2015 WL 5671902 at *6 (S.D.N.Y. Sept. 25, 2015). Such "work" is for the participant's own benefit and is not a basis for a cognizable forced labor claim. *Id.* at *8 (dismissing plaintiff's claims under the Thirteenth, Fifth, and Fourteenth Amendments and the FLSA where "principal benefit of [p]laintiff's participation in [rehab] program was to him") (internal quotes and citations omitted); *Saraswat v. Business Integra, Inc.*, 15-CV-4680, 2019 WL 1865193 at *7 (E.D. N.Y. Apr. 25, 2019) (holding that "work" performed, not for defendant's benefit, but for plaintiff's own benefit, defeated plaintiff's Section 1589(a) claim, as plaintiff did not perform "labor" or "services" within the meaning of the statute). Count One fails on this ground alone.

### 2. Plaintiffs have not pleaded that Central engaged in unlawful coercion in violation of Section 1589(a).

The crux of Plaintiffs' 1589(a) claim in Count One is that they were subject to "threats" if they did not engage in the work therapy component of the ARC program, and that they were "vulnerable" to such "threats" because Central did not pay them and program rules placed limits on their time and communications. But the "threats" they allege are not actionable under the law.

     a.     **Plaintiffs' asserted "threats" do not amount to "threats of serious harm" or "threatened abuse of law or legal process" under Section 1589(a).**

To be actionable, threats of harm under 1589(a) must be "sufficiently serious to compel [a] person to remain…when [he or she] otherwise would have left." *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017). Section 1589 defines "[s]erious harm" as "any harm. . . that is sufficiently serious, under all the surrounding circumstances, **to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm**." 18 U.S.C. § 1589(c) (emphasis added). "Threatened abuse of law or legal process" for purposes of Section 1589 means the "threatened abuse of a law or legal process…in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person **to cause that person to take some action or refrain from taking some action**." 18 U.S.C. § 1589(c). Plaintiffs do not satisfy this standard for three separate reasons.

*First*, Plaintiffs' alleged "threats" are not actionable because their allegations show that they had a voluntary choice to leave the ARC program and two even opted to return as repeat participants. For example:

- Plaintiff Lewis' allegations in the FAC show that he participated in an ARC program in 2015, left, and then returned to an ARC program in 2019. (FAC ¶ 215);

- Plaintiff Page's allegations in the FAC show that he participated in an ARC program off-and-on "at various times from 1999 until 2017." (FAC ¶ 245);

- In the original complaint, Plaintiff Burkhart admits leaving the ARC program after only "four or five weeks" on his own volition. (ECF No. 1, Compl. ¶ 217).[6]

---

[6] The Court should consider this previous admission even though Plaintiffs studiously deleted it in their FAC in response to Defendants' first motion to dismiss. *See Ashley v. United States*, Case No. 1:20-CV-0154-SWS/MLC, 2020 WL 8996805 at * 7 n. 8 (D.N.M. Nov. 2, 2020) (noting that courts "need not ignore allegations in the original complaint where a plaintiff blatantly changes his statement of facts in order to respond to the defendant's motion to dismiss") (internal citations and quotes omitted).

The comings-and-goings of Plaintiffs through the ARC program, as demonstrated by these allegations, show that Plaintiffs had a "viable exit option" and negates any reasonable inference that the complaint plausibly alleges threats that were sufficiently serious "to compel a reasonable person of the same background . . . to continue performing labor or services in order to avoid incurring that harm." *Muchira*, 850 F.3d at 620. That several Plaintiffs allege leaving and returning to the ARC program as repeat participants forecloses Plaintiffs' Section 1589(a) claim. *See Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 994 (D. Idaho 2019) (dismissing TVPRA claim on summary judgment where "three of the [P]laintiffs quit during their tenure" with defendant).

*Second*, the claims of Plaintiffs Lewis and Page ("Walk-In Plaintiffs") fail because "threats" of losing ARC program access are not "threats of serious harm" under the Section 1589(a). Courts have consistently held that "warnings of adverse but legitimate consequences" are not actionable under the TVPRA. *Headley v. Church of Scientology Intern.*, 687 F.3d 1173, 1180 (9th Cir. 2012) (explaining that the law distinguishes between "[i]mproper threats of coercion and permissible warnings of adverse but legitimate consequences"); *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004) (same).

The FAC alleges that Central's ARCs furnish participants with food and shelter, as long as they follow program rules, including engagement in the work-therapy component of the program. (*See, e.g.*, FAC ¶ 140). Walk-In Plaintiffs assert that Central threatened their loss of "food and shelter" if they did not engage in work therapy. (*See, e.g.*, FAC ¶¶ 227, 258). These general assertions are an unavailing attempt to avoid the obvious fact that "food and shelter" *is part and parcel of the ARC program*. Walk-In Plaintiffs' assertions thus amount to an allegation that Central told them that if they did not engage in work therapy (as with attendance at chapel or any other programmatic aspect of the ARC program), they could no longer participate in, and reap the benefits of, the ARC program.

17

This is not an illegal threat under the TVPRA and in no way suggests "serious harm" as contemplated by the statute. For a defendant to engage in unlawful coercion, it must threaten some serious *collateral* harm to the plaintiff outside of mere disassociation with plaintiff. *See Headley*, 687 F.3d at 1180 (holding that the threat of banishment from a church was insufficient to constitute unlawful coercion under section 1589(a)). Central is equally entitled to give "legitimate warning[s]" of expulsion to ARC participants if they do not follow program rules. *Id*.[7]

*Third*, Plaintiffs Taylor, Lucas, and Burkhart ("Justice-Referred Plaintiffs") do not allege an unlawful means of coercion because they fail to articulate how their purported "threats" of re-incarceration are attributable to Central and not simply the reality that they committed crimes and faced possible incarceration if they breached the conditions of their parole or probation.

Courts have held that participating in a work-rehab program in lieu of jail time, though a "painful choice," is still a "voluntary" one. *See Fochtman v. DARP, Inc.*, Case No. 5:18-CV-5047, 2018 WL 3148113 at *4 (W.D. Ark. June 27, 2018) (collecting cases); *Vaughn*, 2015 WL 5671902 at * 6 (dismissing Thirteenth Amendment claim, noting that participation in work-rehab program in lieu of jail time was "voluntary"). A private operator of a work-rehab program is permitted to advise a participant that he or she may leave a program despite the possible consequence of further jail time. *See Vaughn*, 2015 WL 5671902 at * 6 (no Thirteenth Amendment claim against rehab operator where operator advised plaintiff that he could leave if he refused to "work").

Absent from the FAC are well-pleaded facts that Central said anything to Justice-Referred Plaintiffs other than advise them that they would have to leave the ARC, and as such, risk breaching their parole and going back to jail, if they did not comply with program rules. For these advisements

---

[7] To hold otherwise would raise serious questions about infringement of Central's First Amendment rights. *Headley*, 687 F.3d at 1180 (noting that under the First Amendment's free exercise clause, "[a] church is entitled to stop associating with someone who abandons it").

to be anything other than "warnings of adverse but legitimate consequences" would impermissibly stretch the TVPRA well beyond its Thirteenth Amendment moorings; they do not serve as a basis for a cognizable claim. *Headley*, 687 F.3d at 1180; *Vaughn*, 2015 WL 5671902 at *6-7 (rejecting Thirteenth Amendment claim under similar circumstances).

Section 1589 of the TVPRA cannot be validly interpreted to apply to participation in a rehabilitation program that is, as is alleged here, judicially tied to a criminal sentence. Congress passed Section 1589 pursuant to its powers under the Thirteenth Amendment. *See John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1003 (S.D. Ind. 2007) ("Section 1589…is obviously an exercise of Congressional power under Section Two of the Thirteenth Amendment"); *Toviave*, 761 F.3d at 629 (explaining that Section 1589 was "passed to implement the Thirteenth Amendment…") *Crowe v. Director, TDCJ-CID*, 2018 WL 7814730 at *2 (E.D. Tex. Sept. 18, 2018), *report and recommendation adopted*, No. 6:16cv491, 2019 WL 1274787 (E.D. Tex. Mar. 19, 2019) ("The Forced Labor Act was 'passed pursuant to Congress's powers under the Thirteenth Amendment . . . to outlaw modern manifestations of slavery and involuntary servitude'").

The Thirteenth Amendment explicitly exempts from its reach labor as punishment for those duly convicted of a crime. U.S. Const. Amend. 13, sec. 1 ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.")

Although under its enforcement powers Congress may pass laws prohibiting a "broader swath of conduct" beyond the text of the Reconstruction Amendments, what it may not do is "substantively redefine" what is prohibited by the Amendments themselves. *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003) (addressing the Fourteenth Amendment); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 440 (1968) (Congress's enforcement powers under the Thirteenth Amendment are tied to the "badges and incidents" of prohibited slavery and involuntary

servitude). Accordingly, several federal courts have explained that the TVPRA does "not apply to work specifically excepted by Section 1 of the Thirteenth Amendment," which exempts from its reach work as part of a criminal sentence. *Crowe*, 2018 WL 7814730 at *2; *Manley v. Indiana Dept. of Correction*, No. 3:13-CV-1308 JD, 2015 WL 4077243 at *1 (N.D. Ind. July 6, 2015) (same).

Justice-Referred Plaintiffs allege that they participated in the ARCs[8] by judicial referral as part of their state court criminal sentences as an alternative to serving their convictions in jail. (FAC ¶¶ 181, 199, 231). Because Section 1589 does not apply, nor can it validly apply, in these circumstances, those Plaintiffs have no right to relief under section 1589(a). *Crowe*, 2018 WL 7814730 at *2; *see also Lopez*, 2017 WL 11472556 at *2 (holding that TVPRA did not apply where plaintiff was "a convicted criminal," as the "Thirteenth Amendment excludes convicted criminals from the prohibition of involuntary servitude"). [9]

> **b.    The complaint does not plead facts plausibly showing that Central engaged in unlawful means of coercion.**

Federal courts dismiss Section 1589(a) claims where a complaint fails to set forth particular facts about a purported "threat" beyond "conclusory statements." *Kelsey v. Goldstar Estate Buyers Corp.*, No. 3:13-cv-00354-HU, 2014 WL 1155253 at *6 (D. Or. March 21, 2014) (holding that "regurgitation of the statutes' wording woven together with conclusory statements" is not sufficient to state a Section 1589(a) claim).

The Justice-Referred Plaintiffs baldly assert that employees of Central threatened them with parole violations and that they would have to "go back to jail" if they did not follow Central's work-

---

[8] The work therapy component of the ARC rehabilitation program is publicly known. *See* https://www/salvationarmyusa.org/usn/rehabilitation (last visited Feb. 17, 2022) (cited at FAC ¶ 5, fn. 1). Plaintiffs do not allege that their sentencing courts were unaware of the work-therapy aspect of the program.
[9] For similar reasons, the complaint likely fails as a matter of subject of jurisdiction for the Justice-Referred Plaintiffs under the *Rooker-Feldman* doctrine because Justice-Referred Plaintiffs are effectively waging a collateral attack on their state-court criminal sentencing orders. *See, e.g., Copeland v. C.A.A.I.R.*, Case No. 17-CV-564-TCK-JFJ, ECF No. 237 (N.D. Okla. Dec. 10, 2020) (applying *Rooker-Feldman* to bar TVPRA claims of rehab participants who were judicially ordered to rehab program), *appeal filed*, 21-5024 (10th Cir.).

therapy instructions. (*See, e.g.*, FAC ¶¶ 191, 212, 242). The Walk-In Plaintiffs likewise make the conclusory assertion that employees of Central threatened that they would lose "access to food and shelter" if they did not perform work-therapy at Central's facilities. (*See, e.g.*, FAC ¶¶ 227, 258).

None of the Plaintiffs allege the date, time, or place of the alleged "threats," nor do they identify the individual or individuals at Central who purportedly made them. Plaintiffs provide no specification as to what was communicated when the "threats" were made, or the means by which they were communicated. Plaintiffs' allegations lack necessary factual detail and are thus insufficient to plausibly state that Central engaged in "unlawful" threats to sustain Count One. *See, e.g., Roman v. Tyco Simplex Grinnell*, Case No. 8:16-cv-3449-T-33AEP, 2017 WL 2427251 at *5 (M.D. Fla. June 5, 2017) (dismissing section 1589 claim with prejudice where plaintiff failed to allege "who threatened him," "how he was threatened," and his admission that he was free to leave and acknowledgment that he left voluntarily); *Kelsey*, 2014 WL 1155253 at *3 (vague threats that defendant would withhold "food, shelter, money, and/or continued employment" are insufficient to state a section 1589(a) claim); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement") (internal quotation marks and citations omitted).

> **3.    Plaintiffs have not alleged that they engaged in work therapy *because of* any purported threats by Central.**

The third element of a section 1589(a) claim requires Plaintiffs to plead causation, *i.e.,* that Central's purported threats caused them to render labor. *See Reyes-Trujillo*, 513 F. Supp. 3d at 794 (explaining that the "the harm or threat of harm must be one that compels the victim to remain when they otherwise would have left.")

Walk-In Plaintiffs, by definition, "walked in" to their respective ARCs voluntarily. Justice-Referred Plaintiffs opted to participate in their respective programs as part of their criminal sentences in lieu of jail time. None of the Plaintiffs allege that they were lured to an ARC by either

Defendant, or that they were unaware that there was a work-therapy component when they decided to participate in the program.

Plaintiffs assert, in only conclusory terms, that once voluntarily at their respective ARCs, they were exposed to "threats" if they did not engage in work therapy, and that Central "successfully forced [them] to labor" (FAC ¶¶ 196, 214, 228, 244, 262). But nowhere do they allege that they believed such "threats," or that the "threats" *caused them* to remain participants in an ARC. There were myriad other reasons why they may have remained participants there, including that the ARCs provided them with a robust rehabilitation program in a safe environment, including counseling, in addition to food and lodging, generally free of charge, and for the Justice-Referred Plaintiffs, an alternative to prison. (FAC ¶ 5, n. 1); *see also Xydakis v. Target, Inc.*, 333 F. Supp. 2d 683, 685 (N.D. Ill. 2004) (complaint "must allege all of the elements necessary to recover").

Despite Defendants' invitation to do so in the first motion to dismiss, Plaintiffs still fail to allege a causal link between their work therapy at the ARCs and Central's purported "threats." This failure is fatal to their claim under section 1589(a). *See, e.g., Muchira v. Al-Rawaf*, Case No. 1:14-cv-770, 2015 WL 1787144 at *8 (E.D. Va. Apr. 15, 2015) (dismissing plaintiffs' TVPRA claim on motion for summary judgment where she failed to show that "she remained in Defendants' employment because of threats of serious harm…"); *McCullough v. City of Montgomery*, Case No. 2:15-cv-463-RCL, 2020 WL 3803045 at *9 (M.D. Ala. July 7, 2020) (plaintiffs' failure to show that they worked because of defendant's purported unlawful means was grounds to dismiss claim at summary judgment).

B.       **Plaintiffs Also Fail To Allege Article III Standing For Count One Under Rule 12(B)(1).**

Plaintiffs' failure to allege a causal link between their work at the ARCs and Central's purported "threats" also dooms their Article III standing.  At the pleading stage, standing doctrine requires that plaintiffs plead facts sufficient to allege "an injury in fact that is traceable to the

defendant's conduct . . . . " *Cassillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). The principle of traceability—the relationship between a plaintiff's asserted injury and defendant's purported conduct— requires "but for" causation. *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018) (explaining that Article III standing requires "but-for causation"). Plaintiffs must allege facts showing that "but for" defendants' purported illegal conduct, they would not have suffered injury. *Kowalski v. Cook County Officers Electoral Bd.*, Case No. 16-cv-1891, 2016 WL 4765711 at *3 (N.D. Illinois Sept. 13, 2016).

Plaintiffs do not allege that they participated in work therapy at Central's ARCs because of Central's purported "threats." As such, they fail properly to allege Article III standing, and their Section 1589(a) claim should be dismissed. *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 845-46 (N.D. Ill. 2021) (dismissing plaintiff's complaint for lack of Article III standing where plaintiff failed to plead facts showing that the defendant "directly caused any of Plaintiff's injuries" or that the defendant "contributed to any of Plaintiff's alleged injuries").

## III.   THE FAC'S REMAINING COUNTS SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE THEY ARE DERIVATIVE OF COUNT ONE, WHICH IS NOT A VALID CLAIM.

Counts Two through Five assert the following additional claims against both Defendants:

- Count Two under section 1589(b) asserts that Defendants "knowingly benefited" from forced labor;

- Count Three under section 1590(a) asserts that Defendants "knowingly recruited" forced labor;

- Count Four under section 1594(b) asserts that Defendants "conspired with on another" to "knowingly recruit" and "knowingly benefit" from forced labor; and

- Count Five under section 1594(a), asserts that Defendants "attempted" to violate sections 1589 and 1590 of the TVPRA.

Absent a validly stated forced labor claim, these claims, which are merely derivative of a Section 1589(a) claim, must also fail. *See, e.g.*, *Muchira*, 2015 WL 1787144 at *8 (dismissing

claims under sections 1590, 1592, 1594 and 1595, while explaining that such claims require an underlying forced labor claim to proceed); *McCullough*, 2020 WL 3803045 at *10 (explaining that a claim for "benefiting" from labor forced labor requires, first, a predicate forced labor claim); *Konstantinova v. Garbuzov*, No. 2:21-CV-12795 (WJM), 2021 WL 5881670 *6 (D.N.J. Dec. 13, 2021) ("Plaintiff's contention that [defendant] attempted to and conspired to violate §§ 1584, 1589, 1590, or 1595 cannot succeed as a matter of law given the Court's determination that Plaintiff has not stated a claim for violation of the predicate charges.").[10]

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the FAC be dismissed in its entirety.

---

[10] Count Five, Plaintiffs' "Attempted Trafficking," claim also fails because it is not a basis for a civil cause of action under 18 U.S.C. § 1595(a). Section 1594(a) states that "[w]hoever attempts to violate [the TVPRA] shall be punishable in the same manner as a completed violation . . . ." But Section 1595(a), the TVPRA's civil remedies provision, provides a civil remedy for only "*violation[s]*" of the TVPRA—not "attempted" ones. 18 U.S.C. § 1595(a) ("An individual who is a victim of *a violation of this chapter* may bring a civil action against the perpetrator . . . .").

Dated: February 18, 2022

Respectfully submitted,

s/ Amy Gibson

Amy M. Gibson, ARDC # 6293612
agibson@agdglaw.com
Maryam Arfeen, ARDC #6316640
marfeen@agdglaw.com
ARONBERG GOLDGEHN
330 North Wabash Avenue – Suite 1700
Chicago, Illinois 60611
312-828-9600

Thomas P. Gies
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 624-2690
Admitted *Pro Hac Vice*

Attorneys for Defendants