UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRELL TAYLOR, et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 21-CV-6105 |
| v. | ) |
| | ) Judge John Robert Blakey |
| THE SALVATION ARMY | ) |
| NATIONAL CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

The Court grants Plaintiffs' request for judicial notice [56], and motion for leave to respond [59], grants Defendants' motion to dismiss [39], and denies as moot Defendants' motion for a protective order [35]. As explained more fully in this order, the claims brought by Plaintiffs Darrell Taylor, Charles Lucas, Darrell Burkhart, and are dismissed without prejudice for lack of jurisdiction. The claims brought by the remaining Plaintiffs, Kevin Lewis and Leevertis Page, are dismissed for failure to state a claim. As Plaintiffs have already amended their complaint and because nothing in the amended complaint suggests that the Plaintiffs can amend to cure the defects identified below, the Court denies leave to amend. Civil case terminated.

## STATEMENT

I.  Background

Plaintiffs Darrell Taylor, Charles Lucas, Kevin Lewis, Darrell Burkhart, and Leevertis Page participated in the Adult Rehabilitation Center ("ARC") programs, which, in Illinois and Michigan, are administered by Defendant The Salvation Army Central Territory ("SA Central") in accordance with policies promulgated by Defendant The Salvation Army National Corporation ("SA National."). [30] ¶ 48, 49. Under the guise of "work therapy" for substance abuse disorders, the ARC program requires its participants to work in The Salvation Army's commercial programs such as its thrift stores. [30] ¶¶ 4, 5, 6. To participate in the ARC program—and to receive the benefit of the shelter, clothing, and food provided under the program—individuals must work in The Salvation Army's commercial operations. [30] ¶ 11. Plaintiffs Taylor, Lucas, and Burkhart (the "justice-referred Plaintiffs") allege that they were required to participate in the ARC program as a condition of their probation and parole. [30] ¶¶ 8, 180, 199, 231. Plaintiff Lewis and Page (the "walk-in Plaintiffs") were not required to participate in the ARC program but were solicited by Defendants to participate on account of the walk-in Plaintiffs' economic vulnerabilities. [30] ¶¶

9, 10, 215, 245. Participants in the ARC program who do not work, or who otherwise violate the rules of the ARC program, may get kicked out of the ARC program, thus losing access to the food and shelter provided under the program. [30] ¶ 16. Additionally, justice-referred Plaintiffs who are kicked out of the ARC program may be reincarcerated for violating the terms of their probation or parole. [30] ¶ 14.

In their first amended complaint ("FAC"), Plaintiffs, on behalf of a putative class, bring five claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. 1589 *et seq.* Plaintiffs claim that SA Central obtained trafficked labor in violation of 18 U.S.C. § 1589(a) (Count I), [30] ¶¶ 276–85. They claim both Defendants benefited from trafficked labor in violation of 18 U.S.C. § 1589(b) (Count II), [30] ¶¶ 286–99; recruited trafficked labor in violation of 18 U.S.C. § 1590(a) (Count III), [30] ¶¶ 300–04; conspired to recruit, obtain, and benefit from trafficked labor in violation of 18 U.S.C. § 1594(b) (Count IV), [30] ¶¶ 305–11; and attempted trafficking in violation of 18 U.S.C. § 1594(a) (Count V), [30] ¶¶ 312–16.

Defendants move to dismiss, [39], and they also move for a protective order barring jurisdictional discovery, [35]. Plaintiffs also filed a request for judicial notice [56], and a motion to respond to Defendants' authority [59], which the Court grants.

## II. Discussion & Analysis

Defendants move to dismiss for lack of standing, for lack of personal and subject matter jurisdiction, and for failure to state a claim. The Court considers each argument below.

### A. Standing

Defendants first argue that Plaintiffs lack standing under Article III as the FAC fails to allege that they participated in the ARCs because of Defendants' alleged threats. [39-1] at 30. Although fashioned as a challenge to the Court's subject-matter jurisdiction, Defendants' argument really is a challenge to the sufficiency of Plaintiff's complaint to state a claim for relief under the TVPRA. But in keeping with the Court's independent obligation to ensure it has subject matter jurisdiction over the parties' dispute, *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (quoting *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013)), the Court nonetheless considers standing under Article III.

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). If a defendant challenges the facial sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept as true all well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). To meet the "irreducible constitutional minimum of standing" under Article III of the Constitution, Plaintiffs must show that they "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (citing *Lujan*, 504 U.S. at 560–61)). The burden of establishing standing rests with the party invoking federal jurisdiction and, at the pleading stage, that party must "clearly . . . allege facts demonstrating each element." *Id.* at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Relevant here, the "fairly traceable" element requires a "causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). This inquiry does not require that a defendant "be the most immediate cause, or even a proximate cause of the plaintiffs' injuries; it requires only that those injuries be 'fairly traceable' to the defendant," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014), and is a "relatively modest" burden to meet at the pleading stage, *Bennet v. Spear*, 520 U.S. 154, 171 (1997).

Here, Plaintiffs have standing under Article III. Plaintiffs have adequately alleged an injury in fact because the FAC alleges that the Plaintiffs were forced to labor for Defendants. *See* [30] ¶¶ 196, 214, 228, 244, 262. As it relates to the "fairly traceable" requirement, the FAC alleges generally that Defendants' conduct, through their threats and policies, caused Plaintiffs to provide Defendants with their labor. [30] ¶¶ 13, 15, 20. Specific to the named Plaintiffs, the FAC also alleges that Defendants obtained their labor through allegedly unlawful conduct such as threats of imposing further incarceration for the justice-referred Plaintiffs, *see id.* ¶¶ 195, 213, 243, or threats to withhold food and shelter from the walk-in Plaintiffs, s*ee id.* ¶¶ 227, 261. These allegations plausibly suggest that Plaintiffs' injuries are "fairly traceable" to Defendants' conduct and are not the result of an independent third party not before the Court. Finally, Plaintiffs' alleged injuries are redressable by a favorable decision by the Court because Plaintiffs seek to recover damages from Defendants under the TVPRA, which purportedly prohibits Defendants' conduct, *see* [30] ¶¶ 284, 298, 303, 310, 315; 18 U.S.C. §§ 1589, 1590, 1594.

B.   **Rooker-Feldman**

Next, in a footnote, Defendants argue that the *Rooker-Feldman* doctrine bars the claims brought by the justice-referred Plaintiffs. [39-1] at 27 n.9. The Court finds this argument more persuasive. *Rooker-Feldman* divests lower federal courts of subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* also bars claims "inextricably intertwined with a state court judgment." *Sykes v. Cook County Circuit Court Probate Div.*, 873 F.3d 736, 742 (7th Cir. 2016). In determining whether a claim is "inextricably intertwined" with a state court judgment, a court must determine "whether the federal claim alleges that the injury was caused by the state court

3

judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.* But if the injury "is executed through a court order, there is no conceivable way to redress the wrong without overturning the order of a state court." *Id.* at 473.

Here, the TVPRA claims brought by the justice-referred Plaintiffs are barred under *Rooker-Feldman*. The justice-referred Plaintiffs claim they are referred to the ARC program by court order or as a condition of probation or parole and are generally required to complete the entire 180-day ARC program as a condition of their release; if they fail to comply, they may be subject to further incarceration. [30] ¶¶ 145, 150, 151. The justice-referred Plaintiffs further allege that they "do not have a choice about whether they work" and "they *must* report to and participate in the ARC program or they risk violating their terms of parole or probation and reincarceration." [30] ¶ 8. Specific to the named Plaintiffs, the complaint also alleges that Defendants' purported threats of serious harm and abuse of legal processes occurred pursuant to their parole and/or probation requirements. *See* [30] ¶¶ 180 ("Taylor entered the ARC workforce to comply with aspects of his parole requirements."); 199 ("Lucas entered the ARC workforce to comply with aspects of his parole requirements."); 200 ("Lucas's parole officer told him that staying at the ARC program was mandatory for at least three months."); 231 ("Burkhart was mandated to stay at the ARC for 12 months as part of his probation."); 232 ("Burkhart understood that he would violate his conditions of release, and risk reincarceration, if he left the ARC at any time before the end of the 12 month period."). Plaintiffs' claims in this regard constitute a collateral attack on those state orders because the Court cannot redress Plaintiffs' injuries without overturning the state court's orders that required them to participate in the ARC program in the first place. *See Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) ("[I]f a suit seeking damages for the execution of a judicial order is just a way to contest the order itself, then the *Rooker-Feldman* doctrine is in play.")

Plaintiffs argue that *Rooker-Feldman* does not apply because their claims arise from Defendants' independent misconduct in violating the TVPRA and not any order or judgment of a state court. [44] at 32 n.4.[1] Not so. The justice-referred Plaintiffs

---

[1] In support of its argument, Plaintiffs cite to *Burrell v. Lackawanna Recycling Ctr., Inc.*, where a Pennsylvania district court found that *Rooker-Feldman* did not bar TVPRA claims brought by plaintiffs forced to labor for a recycling center in lieu of incarceration after state courts found them in civil contempt for failure to pay child support. No. 3:14-cv-1891, 2021 WL 3476140, at *10 (M.D. Pa. Aug. 6, 2021). But the *Burrell* court's reasoning depended upon the "unusual facts" in the case because Pennsylvania law allows state courts to modify child support payment orders if a party demonstrates changed circumstances. *Id.* at *14; 23 Pa. C.S. § 4532. The *Burrell* court reasoned that if plaintiffs had alleged such changed circumstances following the entry of contempt by the state court, then plaintiffs' claims would not be an attack on a state court's contempt order because their injuries would have occurred *after* the entry of the state court judgment. *Burrell*, 2021 WL 3476140, at *10. The *Burrell* court later concluded that plaintiffs' failure to allege any such changed circumstances doomed their TVPRA claims and noted that if it accepted as true plaintiff's conclusory allegations that they had no choice to work at the recycling center, then their TVPRA claims would have been "an attack on

4

participated in the ARC program because a state court order compelled them to do so—they allege that they were directed to the ARC program by court order and were required to participate in the ARC program or risk violating the terms of their parole or probation. [30] at ¶ 8. Their claims are thus "inextricably intertwined" with the state court's judgment. *See Sykes*, 837 F.3d at 742 ("In other words, there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment."); *Holt v. Lake Cty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) ("[A]bsent the state court's judgment evicting him from his property, [plaintiff] would not have the injury he now seeks to redress."); *see also Copeland v. C.A.A.I.R., Inc.*, No. 17-cv-564-TCK-JFJ, 2020 WL 7265847, at *9 (N.D. Okla. Dec. 10, 2020) (holding *Rooker-Feldman* barred TVPRA claims brought by plaintiffs who were ordered to defendant's rehabilitation center by a court and rejecting plaintiffs' argument that their claims challenge only defendant's requirement that they work without compensation because "[d]efendants did not require Plaintiffs to attend [the rehabilitation center]—an Oklahoma state court did.").

The Court thus finds that the claims brought by Plaintiffs Darrell Taylor, Charles Lucas, Darrell Burkhart, and Kevin Lewis (to the extent Lewis' claims arise from his participation in the ARC as a justice-referred worker in 2019, [30] ¶ 215) are barred by *Rooker-Feldman* and dismisses them without prejudice for lack of jurisdiction.

C.     **Personal Jurisdiction**

Next, Defendants move to dismiss Plaintiffs' claims against SA National under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over it. [39-1] at 12-18. Under Rule 12(b)(2), a complaint need not include facts alleging personal jurisdiction; but once the defendant moves to dismiss the complaint under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, the Court rules on a Rule 12(b)(2) motion without an evidentiary hearing, Plaintiffs need only establish a prima facie case of personal jurisdiction. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020); *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where the defendant "has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 338 F.3d at 783. The Court accepts as true any facts in affidavits that do not conflict with the complaint or Plaintiff's submissions, *Curry*, 949 F.3d at 393, but the Court must resolve any disputes concerning the relevant facts in Plaintiff's favor. *Purdue Research Found.*, 338 F.3d at 782–83.

---

the state court contempt judgments which is precluded by *Rooker-Feldman*." *Id.* at *14. *Burrell* thus does not help Plaintiffs.

5

As this case arises under this Court's federal question jurisdiction, personal jurisdiction exists "if either federal law or the state in which the court sits authorizes service of process to that defendant." *Curry*, 949 F.3d at 393 (quoting *Mobile Anesthesiologists Chi. LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)). The TVPRA does not provide for nationwide service of process. *See* 18 U.S.C. § 1595; *see also C.T. v. Red Roof Inns, Inc.*, No. 2:19-CV-5384, 2021 WL 2942483, *10 (S. D. Ohio July 1, 2021) ("Taken together, the plain text of the TVPRA's extraterritorial jurisdiction provision does not contemplate nationwide service of process."). Thus, personal jurisdiction over SA National is proper "only if authorized both by Illinois law and the United States Constitution." *Curry*, 949 F.3d at 393 (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011)).

Illinois' long arm statute provides that "[a] court may also exercise jurisdiction on any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because the Seventh Circuit has found no "operative difference" between the two constitutional limits, this Court can limit its analysis to whether exercising jurisdiction over SA National comports with the Due Process Clause of the Fourteenth Amendment. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010). Under well-established law, this Court may exercise personal jurisdiction over nonresidents only when they have "minimum contacts" with Illinois such that litigating the case here "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction, general jurisdiction and specific jurisdiction.

Here, Plaintiffs have not shown that this Court may exercise general jurisdiction over SA National; rather, Plaintiffs allege that SA National is a New Jersey corporation with its principal place of business in Virginia, [30] ¶ 27, and that SA National has no property or employees in Illinois. [39-3] ¶¶ 13, 14. SA National thus lacks the "continuous and systematic contacts as to render it essentially home" in Illinois, *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (cleaned up); *see also* [39-2]; [39-3].[2] General personal jurisdiction does not exist.

The next type of personal jurisdiction, specific jurisdiction, depends upon the facts of the case and exists when a defendant has "purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks omitted). In support of its Rule 12(b)(2) motion to dismiss, Defendants submitted the declaration of Randall Polsley, the Commander of the ARCs SA Central operates in the Central Territory, [39-2], as well as the declaration of Kenneth O. Johnson Jr., the National Chief Secretary of The

---

[2] The parties submitted extrinsic evidence relevant to the Court's exercise of jurisdiction over SA National, which the Court considers solely for Defendants' Rule 12(b)(2) motion to dismiss. *See Purdue Research Found.*, 338 F.3d at 782; *Curry*, 949 F.3d at 393.

Salvation Army and Vice President of SA National, [39-3]. Although these declarations establish that SA National is not involved in the day-to-day operations of the ARCs in the Central Territory (which are operated solely by SA Central), they do not refute the allegations in the FAC that SA National crafts and formulates the policies from which Plaintiffs' TVPRA claims stem. *See, e.g.*, [30] ¶ 51 ("SA National dictates national policy for all Salvation Army Territories."); ¶ 56 ("All Territories, including SA Central Territory, operate under the same broad, overall policies, including those dictated by the Commissioners' Conference under the Leadership of the National Commander."); ¶ 57 ("There is an agreement by and between SA National and SA Central Territory that SA Central Territory will operate under The Salvation Army's policies and procedures, including those implemented by SA National, and will carry out The Salvation Army's programs within the Central Territory, including in Illinois."); ¶ 63 ("By controlling the structure and essential terms and conditions of the ARC program in the Central Territory, including in Illinois, SA National intentionally created a situation in which ARC workers would feel compelled to remain in the program."); ¶ 274 ("The core principles governing Defendants' forced labor 'work therapy' program emanate from national policy and are uniform across the Classes.").

These unrefuted allegations demonstrate that SA National "purposefully directed" its conduct towards Illinois through its role in formulating the policies by which the ARCs in the Central Territory operate, notwithstanding the fact that the day-to-day operation of the ARCs in the Central Territory are under the sole purview of SA Central. *See Felland v. Clifton*, 682 F.3d 665, 674–75 (7th Cir. 2012) (noting a defendant's conduct is "purposefully directed" to the forum state if the conduct was: (1) intentional; (2) expressly aimed at the forum state; and (3) with defendant's knowledge that the plaintiff would be injured there). Moreover, Plaintiffs' claims "arise out of or relate to" SA National's contacts with Illinois because Plaintiffs allege that their injuries arose from their very participation in the ARCs that were governed by the policies SA National had a role in promulgating. Thus, the Court finds that there is a strong "'relationship among the defendant, the forum, and the litigation,'— the 'essential foundation' of specific jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Finally, the Court must also determine whether asserting jurisdiction over SA National offends "traditional notions of fair play and substantial justice," *Int'l Shoe Co.*, 326 U.S. at 316, and must consider factors such as "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies." *Purdue Research Found.*, 338 F.3d at 781 (internal quotation omitted). SA National presents no argument concerning the unfairness of subjecting it to jurisdiction here

7

and, as the Seventh Circuit has noted, "as long as the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Curry*, 949 F.3d at 402 (quoting *Burger King*, 471 U.S. at 477). Accordingly, the Court finds that Plaintiffs' complaint has made a *prima facie* showing of specific personal jurisdiction over SA National and denies as moot Defendant SA National's claim for a protective order on jurisdictional discovery, [35].

### D. The Sufficiency of Plaintiffs' Allegations

Defendants next move to dismiss pursuant to Rule 12(b)(6), raising various challenges to the sufficiency of Plaintiffs' complaint, including that Plaintiffs have failed to allege that Defendants obtained their labor through threats of serious harm as defined under the TVPRA. *See* [39-1] at 19. The Court agrees.

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), not the merits of the suit, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To meet the plausibility standard, the complaint must supply enough facts to raise a "'reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, this Court must accept as true all well-pleaded facts in a plaintiff's complaint and must draw all reasonable inferences in his favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013).

The Trafficking Victim Protection Reauthorization Act ("TVPRA") provides a private right of action to persons who have been subjected to forced labor. 18 U.S.C. § 1595(a). A defendant is liable under the TVPRA when it "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means:

(1) By means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) By means of serious harm or threats of serious harm to that person or another person;

(3) By means of the abuse or threatened abuse of law or legal process; or

(4) By means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

8

Under the TVPRA, "serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is *sufficiently serious*, under all the surrounding circumstances, to *compel* a *reasonable* person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2) (emphasis added). To state a plausible claim for relief, Plaintiffs must therefore allege sufficient facts in their complaint that Defendants' threats of harm would cause a reasonable person in Plaintiffs' position to continue laboring for Defendants. *See United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) ("In other words, someone is guilty of forced labor if he intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm.").

Here, Plaintiffs fail to allege in their complaint that Defendants obtained their labor through threats of serious harm or through Defendants' schemes, plans, or pattens intended to cause them to believe that they would be subject to serious harm. First, the threats to remove workers from the ARC program and consequently preventing access to ARC-provided food and shelter would not compel a reasonable person to keep laboring in the ARC program. Although the threat to withhold food and shelter in other instances would be a serious harm as defined under the statute, the TVPRA requires that the harm be "sufficiently serious" under "all the surrounding circumstances." 18 U.S.C. § 1589(c)(2). Plaintiffs allege that the ARC program was approximately 180 days long, that the food, clothing, and shelter were provided to workers as a condition of their participation in the ARC program, [30] ¶ 105, and that they had to work in order to remain in the ARC program, [30] ¶ 121. For the walk-in Plaintiffs, participation in the ARC program was voluntary and the work requirement was communicated to the Plaintiffs as part of the intake process. [30] ¶¶ 165, 217, 247. Critically, there is no allegation that Plaintiffs' access to food, clothing, and shelter could be withheld from them even after they had left the ARC program or any other allegation indicating that Plaintiffs could not otherwise leave the ARC program.

For instance, Plaintiffs allege that they were required to hand over their government benefits such as their Supplemental Nutritional Assistance Program ("SNAP") benefits to Defendants while participating in the ARC program, which they allege "impedes" their ability to flee the program. [30] ¶¶ 131. But the complaint also alleges that Defendants use these benefits to purchase food for the workers while they are in the ARC program, [30] ¶ 139 ("The Territories, including SA Central Territory, then obtain forced labor by threatening to strip the ARC workforce of the food (donated by members of the public or purchased with the ARC workforce's forfeited governmental support benefits and/or vouchers."), and that workers regained access to these benefits upon leaving the ARC program, [30] ¶ 131. And although Plaintiffs allege that SA National requires the ARCs to abide by "strict

confidentiality procedures and protocols" concerning the ARC workers, [30] ¶¶ 60, 61, the complaint contains no other allegations explaining how these policies are intended to cause the ARC workers to believe that they would suffer serious harm if they did not work in the ARC program. Without any other factual allegations, this allegation seems entirely consistent with the stated purpose of the ARCs as providing substance abuse treatment for its participants, as alleged in the complaint. *See* [30] ¶¶ 5, 6. Plaintiffs also allege that Defendants' policies prevented them from building their savings and achieving financial independence by paying ARC workers weekly gratuities of $1.00 to $25.00 per week, [30] ¶ 125, 223, 256, and, presumably, preventing them from finding alternative employment by limiting their freedom of movement and communications for the first 30 days of the ARC program, [30] ¶¶ 137, 222, 257. But these are not serious harms under the TVPRA. A reasonable person in the Plaintiffs' position would leave the ARC program and obtain a higher paying job elsewhere if the ARC's gratuity policy prevented them from building their savings.

Third, the TVPRA provides liability for those who "*knowingly* . . . obtain[] the labor or services of a person" through serious harm or threats of serious harm as well as a "scheme, plan, or pattern *intended* to cause the person to believe" that he or she would suffer "serious harm" if they did not provide their labor. 18 U.S.C. § 1589(a)(4). This scienter requirement requires Plaintiffs to allege facts that would allow the Court to infer that Defendants intended that their policies would be perceived by the Plaintiffs in a way to unlawfully obtain their labors. *See United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008) ("Because of the *scienter* requirement, any speech involved must be a threat or else intended to achieve an end prohibited by law."); *Dann*, 652 F.3d at 1170 ("The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her."). Plaintiffs allege in a conclusory fashion that Defendants intended that their policies would cause Plaintiffs and other ARC workers to believe they had no choice but to remain working for Defendants, *see* [30] ¶ 177 ("Through the design, policies, procedures, and threats inherent in the ARC program and other similar programs, Defendants intentionally created circumstances in which reasonable walk-in and justice-referred participants, because of their shared vulnerable backgrounds, believed they had no choice but to remain laboring."), but the complaint is devoid of any allegation indicating that the policies and other parameters of the ARC program were intended to obtain Plaintiffs' labor through threats of serious harm.

Rather, Plaintiffs argue that the purpose behind Defendants' policies and practices were to "create a culture of coercion and isolation" and were "perceived" by ARC workers to be threats of serious harm. [44] at 29–30. Plaintiffs urge the Court to consider the "unique vulnerabilities" of the ARC workers that made them "highly susceptible" to Defendants' implicit threats. [44] at 23. But Plaintiffs include no allegations concerning the unique vulnerabilities specific to walk-in Plaintiffs Lewis and Page. And even if Plaintiffs had so alleged, the definition of "serious harm" under

the TVPRA also requires consideration of "*all* of the surrounding circumstances," 18 U.S.C. § 1589(a), and requires an evaluation of the purported harm from the vantage point of a reasonable person as well. *See id.* As discussed above, a reasonable person would not feel compelled to continue working in the temporary ARC program when leaving the program would provide them with access to the government benefits allegedly confiscated by the Defendants or otherwise allow them to avoid the negative financial impacts caused by their continued participation in the ARC program (assuming those negatives outweighed the benefits of participation in the program). The unique circumstances of the walk-in Plaintiffs, standing alone, does not compel a different result. *See Konstantinova v. Garbuzov*, 2:21-cv-12795 (WJM), 2022 WL 2128799, at *3 (D.N.J. Jun. 14, 2022) (dismissing forced labor claim where plaintiff only alleged that she "had no other source of income (and thus entirely financially reliant on Defendants) and had no contacts or family in the United States" to be "circumstances that do not necessarily evidence violations of anti-trafficking laws.").

As Plaintiffs cannot allege that they were subjected to serious harm, threats of serious harm, or a scheme, plan, or pattern intended to cause them to believe they would be subject to serious harm, Plaintiffs fail to allege that they were subjected to forced labor as defined under the TVPRA. *See* 18 U.S.C. ¶ 1589. And because all five of Plaintiffs' TVPRA claims require Plaintiffs to plausibly allege that they were subject to forced labor, all five of Plaintiffs' TVPRA claims fail. *See* 18 U.S.C. §§ 1589(a), 1589(b), 1590(a), 1594(b), 1594(a). *See, e.g., Konstantinova*, 2021 WL 5881670, at *6 (D.N.J. Dec. 13, 2021) ("Claims that Myasnikov attempted and conspired to violate §§ 1584, 1589, 1590, or 1595 cannot succeed as a matter of law given the Court's determination that Plaintiff has not stated a claim for violation of the predicate charges.").

Dated: September 19, 2022      Entered:

_____
John Robert Blakey
United States District Judge